

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1805-08

**JOSEPH DENVER SMITH, Appellant**

**v.**

**THE STATE OF TEXAS**

**ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**
**FROM THE FIRST COURT OF APPEALS**
**HARRIS COUNTY**

**KEASLER, J., delivered the unanimous opinion of the Court.**

### O P I N I O N

A jury found Joseph Denver Smith guilty of indecent exposure. Before trial, the judge

denied Smith's motion to quash, which alleged that the information was fundamentally

defective for failing to allege the act or acts relied on to constitute recklessness. We hold that

the First Court of Appeals erred in affirming the trial judge's denial[1] and conclude that the

defect in the information was a substance defect. We therefore reverse and remand the case

---

[1] *Smith v. State*, No. 01-07-00860-CR, 2008 Tex. App. LEXIS 8776, at *6 (Tex. App.—Houston 2008) (not designated for publication).

to the court of appeals to determine what, if any, harm analysis applies.

**Facts**

Houston Police Department Officer Shannon Farquhar testified that on August 12, 2007, he was working in an undercover capacity in Houston's Memorial Park. He was conducting a sting operation in response to "reports of individuals engaging in sexual behavior, masturbation and stuff." A particular area of the park was "[v]ery well known" for this type of behavior, according to Farquhar.

While Farquhar was sitting in his unmarked city vehicle in a parking lot, Smith pulled into the lot. Initially, the two engaged in "[j]ust some glances and stares. That's it. No verbal contact." Farquhar testified that this went on for two to three minutes. The two exchanged glances and head nods, which Farquhar stated is a signal that "the individual is open or engaged in taking part in what's going on in that area of the bathroom or the wooded area portions of the park."

Farquhar exited his vehicle and walked down a path toward a bathroom building about thirty to forty yards away. Smith also exited his vehicle, following Farquhar down the path. When Smith arrived outside the bathroom, Farquhar began touching himself in a "mock masturbation;" he had his fly unzipped and his hand inside his pants. The two were standing "[v]ery, very close." Smith reacted by staring at Farquhar and looking around the area to make sure that they were alone. Smith then began to "gratify himself" from the outside of his pants and proceeded to unzip his fly and place his hands in his shorts. Farquhar stated

that Smith removed his penis from his shorts for thirty to forty-five seconds. In doing so, Smith exposed the shaft area of his penis while masturbating.

Once Smith had exposed himself, Farquhar displayed his badge and identified himself as a police officer and told Smith that he was under arrest for indecent exposure. Smith became "very startled" and tried to walk away from him. Farquhar pulled his gun on Smith, directed him to comply, handcuffed him, and placed him into custody.

**Procedural History**

Smith was charged by information with indecent exposure under Texas Penal Code Section 21.08,[2] which provides in relevant part:

> (a) A person commits an offense if he exposes his anus or any part of his genitals with intent to arouse or gratify the sexual desire of any person, and he is reckless about whether another is present who will be offended or alarmed by his act.

The information charging Smith alleged:

> JOSEPH DENVER SMITH, hereafter styled the Defendant, heretofore on or about APRIL 12, 2007, did then and there unlawfully expose his GENITALS to S. FARQUHAR with intent to arouse and gratify the sexual desire of THE DEFENDANT, and the Defendant was reckless about whether another person was present who would be offended and alarmed by the act, to-wit: THE DEFENDANT EXPOSED HIS PENIS AND MASTURBATED.

Smith moved to quash the information because the State failed to allege what act or acts constituted recklessness as required by Article 21.15 of the Texas Code of Criminal

---

[2] T EX. PENAL CODE ANN. § 21.08 (Vernon 2003), *last amended by* Acts 1993, 73rd Leg., ch. 900, § 1.01, eff. Sept. 1, 1994.

Procedure.[3]  Article 21.15 provides:

> Whenever recklessness or criminal negligence enters into or is a part or element of any offense, or it is charged that the accused acted recklessly or with criminal negligence in the commission of an offense, the complaint, information, or indictment in order to be sufficient in any such case must allege, with reasonable certainty, the act or acts relied upon to constitute recklessness or criminal negligence, and in no event shall it be sufficient to allege merely that the accused, in committing the offense, acted recklessly or with criminal negligence.

In his motion, Smith argued that the information was fundamentally defective because it was insufficient under Article 21.15, Section 6.03(c) of the Penal Code, and our caselaw. Smith cited our 1988 decision in *Gengnagel v. State*[4] in which we recognized that the State must allege "the circumstances of the act which indicate that the defendant acted in a reckless manner."[5]  The trial judge overruled Smith's motion without a hearing.  The jury later found Smith guilty, and the judge sentenced Smith to 180 days' confinement in the Harris County Jail, probated for eighteen months.  Smith appealed the denial of his pretrial motion to quash.

### Court of Appeals

On appeal, Smith relied on our opinion in *Gengnagel* and argued that the information was fundamentally defective for failing to allege with reasonable certainty the acts relied upon to constitute recklessness, an element of the offense.[6]

---

[3] T EX. CODE CRIM. PROC. ANN. art. 21.15 (Vernon 2009).

[4]  748 S.W.2d 227 (Tex. Crim. App. 1988).

[5]  *Id*. at 229.

[6]  *Smith v. State*, 2008 Tex. App. LEXIS 8776, at *1.

The court of appeals held that the information sufficiently described the acts relied upon to constitute recklessness.[7] The court determined that *Gengnagel*'s requirement that the State allege "the circumstances of the act which indicate that the defendant acted in a reckless manner" was "met by the assertion that appellant 'exposed his penis and masturbated' while he was 'reckless about whether another person was present who would be offended and alarmed by the act.'"[8]

We granted Smith's petition for discretionary review to address whether the court of appeals erred in concluding that the information alleged with reasonable certainty the act or acts relied upon to constitute recklessness as required by Article 21.15.

**Analysis**

**A.**

It should first be noted that the court of appeals, relying on its own decision in *State v. Goldsberry*,[9] erroneously applied an abuse-of-discretion standard. The sufficiency of a charging instrument presents a question of law.[10] An appellate court therefore reviews a trial judge's ruling on a motion to quash a charging instrument *de novo*.[11]

---

[7] *Id*. at *5.

[8] *Id*.

[9] 14 S.W.3d 770, 772 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd).

[10] *Barbernell v. State*, 257 S.W.3d 248, 251 (Tex. Crim. App. 2008) (citing *State v. Moff*, 154 S.W.2d 599, 601 (2004)).

[11] *Id*. at 251-52.

In *Mays v. State*, we stated that "[s]ubject to rare exceptions, an indictment tracking the language of the statute will satisfy constitutional and statutory requirements."[12] "The State need not allege facts that are merely evidentiary in nature."[13] Notwithstanding *Mays*, whenever recklessness "enters into or is a part or element of any offense, or it is charged that the accused acted recklessly . . . in the commission of an offense," Article 21.15 establishes an additional requirement: "in order to be sufficient [the charging instrument] in any such case must allege, with reasonable certainty, the act or acts relied upon to constitute recklessness."[14] Indecent exposure, the crime with which Smith was charged, is such a crime.[15] Thus, the information must allege the act or acts relied on to constitute recklessness.

Professors Dix and Dawson have commented that the terms of Article 21.15 present "some conceptual difficulty."[16] The problem arises from the 1974 Penal Code's distinction between culpable mental states and acts.[17] Section 1.07(a)(10) of the Penal Code defines "conduct" as "an act or omission and its accompanying mental state."[18] An "act" is defined

---

[12] 967 S.W.2d 404, 406 (Tex. Crim. App. 1998).

[13] *Id*.

[14] TEX. CODE CRIM. PROC. ANN. art. 21.15 (Vernon 2009), *last amended by* Acts 1973, 63rd Leg., p. 968, ch. 399, § 2(A), eff. Jan. 1, 1974.

[15] TEX. PENAL CODE ANN. § 21.08 (Vernon 2003).

[16] George E. Dix & Robert O. Dawson, 41 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 20.171 (2d ed. 2001), at 624.

[17] *See id*.

[18] TEX. PENAL CODE ANN. § 1.07(a)(10) (Vernon 2003).

as "a bodily movement, whether voluntary or involuntary."[19] And Section 6.03(c) of the Penal Code states, "A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur."[20] The language of Article 21.15 assumes that the culpable mental state of recklessness can be "constituted" by some "act."[21] However, the definition of "act," added in 1974, made this a "conceptual impossibility."[22]

As part of the enacting legislation of the 1974 Penal Code, the Legislature amended Article 21.15 to accommodate the Penal Code's inclusion of the culpable mental state of recklessness.[23] Since the Legislature modified Article 21.15 as part of the same legislation that enacted the 1974 Penal Code, it must have been aware of the terms of Section 6.03(c) of the Penal Code and intended for Article 21.15 to be given effect.[24]

Since an "act," as defined by the Penal Code, cannot logically "constitute

---

[19] *Id*. at § 1.07(a)(1).

[20] *Id*. at § 6.03(c).

[21] George E. Dix & Robert O. Dawson, 41 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 20.171 (2d ed. 2001), at 624.

[22] *Id*.

[23] Acts 1973, 63rd Leg., p. 883, ch. 399, § 2(A), eff. Jan 1, 1974; *see also* *Townsley v. State*, 538 S.W.2d 411, 412 (Tex. Crim. App. 1976).

[24] *Dowthitt v. State*, 931 S.W.2d 244, 258 (Tex. Crim. App. 1996); *see also* TEX. GOV'T CODE ANN. § 311.021(2) (Vernon 2005).

recklessness," in *Gengnagel* we interpreted the provision in Article 21.15 to mean that "the

State must allege circumstances which indicate that appellant was aware of the risk that

another person was present who would be offended by his act of exposing himself and . . .

acted in conscious disregard of that risk."[25]  In reaching this conclusion, we relied on our

holding in *Townsley v. State*.[26]  Townsley was convicted of involuntary manslaughter.[27]  On

appeal, he complained that the trial judge erred in overruling his motion to quash the

indictment, arguing that it did not comply with the requirements of Article 21.15.[28]  The

indictment alleged that Townsley:

> did then and there recklessly cause the death of Luther Eugene Stark by
> driving a motor vehicle at an excessive rate of speed while attempting to elude
> a police officer and recklessly causing said vehicle to run off the roadway and
> roll over, thereby fatally injuring the said Luther Eugene Stark, who was a
> passenger in said vehicle . . . .[29]

We concluded that the indictment "sufficiently alleged with reasonable certainty the

act or acts relied upon to constitute recklessness," and affirmed the conviction.[30]  The

indictment alleging that the offense was committed "by driving a motor vehicle at an

---

[25] *Gengnagel*, 748 S.W.2d at 229.

[26] 538 S.W.2d 411 (Tex. Crim. App. 1976).

[27] *Id*. at 411.

[28] *Id*.

[29] *Id*.

[30] *Id*. at 412-13.

excessive rate of speed while attempting to elude a police officer, and recklessly causing said vehicle to roll over. . . ." alleged "acts" from which a trier of fact could infer the culpable mental state of recklessness.[31]

In *Gengnagel*, Gengnagel was charged by information with indecent exposure.[32] The indictment alleged that Gengnagel

> did then and there expose to Kenneth Gore, his genitals with intent to arouse and gratify the sexual desire of the defendant, and the said defendant did so recklessly and in conscious disregard of whether another person was present who would be offended and alarmed by such act, to-wit: exposition of his genitals by the defendant to complainant.[33]

We noted that the information in *Gengnagel* did "not allege any act or circumstances which would show that this exposition was done in a reckless manner, as required by Article 21.15."[34] Although the word "circumstances" does not appear in Article 21.15, we used it to explain what Article 21.15 requires. Article 21.15 addresses the "act" or "acts"—not as defined by the Penal Code—from which the State will ask the trier of fact to infer that the accused acted with the required recklessness. The "act" or "acts" relied on to prove the mental state do not need to be the same "act" constituting the prohibited conduct.[35]

---

[31] *Id*. at 412.

[32] 748 S.W.2d at 228.

[33] *Id*.

[34] *Id*. at 230.

[35] George E. Dix & Robert O. Dawson, 41 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 20.171 (2d ed. 2001), at 624.

With respect to the recklessness element in *Gengnagel*, the information alleged only "exposition of his genitals by the defendant to the complainant."[36] Though constituting part of the forbidden conduct, this "act" was not something from which a trier of fact could infer recklessness because exposing one's genitals is not by itself reckless. We therefore held that the charging instrument was inadequate.[37]

Though the information charging Smith with indecent exposure was sufficient to satisfy due-process notice requirements,[38] based on *Gengnagel*, the information did not comply with the requirements of Article 21.15. As noted above, the information alleged that Smith,

> did then and there unlawfully expose his GENITALS to S. FARQUHAR with intent to arouse and gratify the sexual desire of THE DEFENDANT, and the Defendant was reckless about whether another person was present who would be offended and alarmed by the act, to-wit: THE DEFENDANT EXPOSED HIS PENIS AND MASTURBATED.

Similar to the deficient pleading in *Gengnagel*, the allegation that Smith "exposed his penis and masturbated," is not sufficient to meet the requirements of Article 21.15. For a person to commit the offense of indecent exposure, the person must be "reckless about whether another person was present who would be offended and alarmed by the act."[39] In this case,

---

[36] 748 S.W.2d at 228.

[37] *Id*. at 230.

[38] *Mays*, 967 S.W.2d at 406.

[39] T EX. PENAL CODE ANN. § 21.08 (Vernon 2003).

a trier of fact could not infer recklessness from the information because there is nothing inherently reckless about either exposing oneself or masturbating. Consequently, the trial judge erred by denying Smith's motion to quash.

In its review of the case, the court of appeals misinterpreted our holding in *Gengnagel* and the requirements of Article 21.15. Its determination that Article 21.15 was satisfied "by the assertion that appellant 'exposed his penis and masturbated' while he was 'reckless about whether another person was present who would be offended and alarmed by the act'" is flawed. The information in this case differed from the one in *Gengnagel* only in that it added "and masturbated," as opposed to only alleging exposure. The additional language here did not cure the defect we recognized in *Gengnagel*. The information would have sufficiently apprised Smith of the act or acts constituting recklessness if the State had alleged that Smith exposed his penis and masturbated in a public place. Indeed, that is what the State ultimately showed at trial.

**B.**

We now discuss the principle of fundamental error. Smith has continuously asserted that the information is fundamentally defective for failing to allege with reasonable certainty the act or acts relied upon to constitute recklessness. Smith has cited *Gengnagel* in support of this proposition. But this approach was abrogated twenty years ago.[40] Until our decision in *Studer v. State*, we used the terms "substance defect," "fundamental error," and "fatally

---

[40] *Studer v. State*, 799 S.W.2d 263, 271 (Tex. Crim. App. 1990).

defective" interchangeably when addressing unpreserved errors in charging instruments that could be raised for the first time on appeal.[41] We called substance defects "fundamental error" because a charging instrument with a substance defect deprived the trial court of jurisdiction.[42] A conviction based on such a charging instrument defect was void.[43] A defendant could therefore challenge even unpreserved substance errors in the charging instrument for the first time on direct appeal or on habeas.[44]

In 1985, the Legislature proposed, and voters approved, an amendment to Section 12 of Article V of the Texas Constitution.[45] The amendment provided, for the first time, a constitutional definition of "indictment" and "information."[46] The constitution was amended to read:

> An indictment is a written instrument presented to a court by a grand jury charging a person with the commission of an offense. An information is a written instrument presented to a court by an attorney for the State charging a person with the commission of an offense. The practice and procedures relating to the use of indictments, including their contents, amendment, sufficiency and requisites are provided by law. The presentment of an indictment or information to a court invests the court with jurisdiction of the

---

[41] *Id*. at 267.

[42] *Id*.

[43] *Id*.

[44] *Id*.

[45] *Cook v. State*, 902 S.W.2d 471, 476 (Tex Crim. App. 1995).

[46] *Id*. at 477.

cause.[47]

At the same time, the Legislature amended Article 1.14 of the Code of Criminal Procedure to provide for the procedural default of claims based on defects in the charging instrument absent a pretrial objection:

> If the defendant does not object to a defect, error, or irregularity of form or substance in the indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and may not raise the objection on appeal or in any other postconviction proceeding.[48]

We noted in *Studer* that "the amendment to Article 1.14 did not change what constitutes a substance defect, but rather only its effect."[49] We further observed, "If omitting an element from an indictment is still a defect of substance in an indictment, it naturally follows that the indictment is still an indictment despite the omission of that element."[50] A trial court therefore has jurisdiction despite a substance defect, and the conviction is not void.[51]

There are limited situations in which a judgment is void. In *Nix v. State*, we noted:

---

[47] TEX. CONST. art. V, § 12.

[48] Acts 1985, 69th Leg., ch. 577, § 1, eff. Dec. 1, 1985.

[49] 799 S.W.2d at 268; *see also Teal v. State*, 230 S.W.3d 172, 177 (Tex. Crim. App. 2007) ("The legislature's purpose in amending the constitution and the statutes was to change the focus from 'whether a defect is fundamental [*i.e.*, a defect of substance or not]' to 'whether the defendant brought the defect to the court's attention.'")

[50] *Id.*

[51] *Cook*, 902 S.W.2d at 477.

A judgment of conviction for a crime is void when (1) the document purporting to be a charging instrument (i.e. indictment, information, or complaint) does not satisfy the constitutional requisites of a charging instrument, thus the trial court has no jurisdiction over the defendant, (2) the trial court lacks subject matter jurisdiction over the offense charged, such as when a misdemeanor involving official misconduct is tried in a county court at law, (3) the record reflects that there is no evidence to support the conviction, or (4) an indigent defendant is required to face criminal trial proceedings without appointed counsel, when such has not been waived, in violation of *Gideon v. Wainwright*. While we hesitate to call this an exclusive list, it is very nearly so.[52]

With respect to the first circumstance, we noted in *Nix* that "[e]xcept for certain circumstances outlined by *Duron* and *Cook*, 'fundamental' indictment errors have been eliminated by constitutional and statutory amendment."[53] In *Duron v. State,* we held that a charging instrument, to confer jurisdiction, must charge "the commission of an offense."[54] In *Cook*, we held that the purported charging instrument failed to charge "a person," was not a charging instrument, and rendered the conviction void.[55] To be consistent with our error-preservation jurisprudence, where a purported charging instrument does not satisfy constitutional requirements, the resulting lack of jurisdiction over the defendant should be characterized as the absence of a nonforfeitable, systemic requirement under *Marin v. State*,

---

[52]  65 S.W.3d 664, 668 (Tex. Crim. App. 2001) (internal citations omitted).

[53]  *Id*. at n.11.

[54]  *Duron v. State*, 956 S.W.2d 547, 551 (Tex. Crim. App. 1997).

[55]  902 S.W.2d at 480.

not as a "fundamental error."[56]

If a charging instrument meets the constitutional requirements, under *Studer*, a defendant must make a pretrial objection to a substance defect in the information or indictment or forfeit the right to complain about it on appeal.[57] Smith properly preserved his complaint by timely moving to quash and receiving an adverse ruling. The court of appeals correctly recognized that fundamental error did not apply, but it mischaracterized Smith's complaint as a notice problem.[58] Smith's complaint is that under Article 21.15 and *Gengnagel*, the information failed to describe an element of the offense.

**C.**

Having dispelled the notion that the error is of a fundamental nature, we must still determine whether the defect in the information was a form or a substance defect. We conclude that it was a substance defect. Substance defects are defined by Article 27.08 of the Code of Criminal Procedure. One such defect is, "[t]hat it does not appear therefrom that an offense against the law was committed by defendant."[59] We have interpreted this provision to include situations in which the charging instrument fails to describe an element of the offense. In *Gengnagel*, we noted, "Since recklessness is an element of the offense of

---

[56] *See Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993).

[57] 799 S.W.2d at 271.

[58] *Smith*, 2008 Tex. App. LEXIS 8776 at *2.

[59]T EX. CODE CRIM. PROC. ANN. art. 27.08 (Vernon 2006).

indecent exposure, and the allegation of the acts relied upon to constitute recklessness is necessary for a valid charging instrument, appellant challenges the substance of the information because it does not meet these requirements."[60] Similarly, in *Studer*, another indecent exposure case, we stated that the information contained a defect of substance because it did not allege an act or acts constituting recklessness.[61] As in *Gengnagel* and *Studer*, the information in this case failed to allege the act or acts constituting recklessness. Therefore, the information suffered from a substance defect.

**D.**

Next, we turn to the issue of harm and observe that the parties have not briefed this issue. Since our holding in *Studer*, we have not considered what, if any, harm analysis is required when a defendant makes a pretrial objection to a defect of substance. A defect of form is reviewed under Article 21.19 of the Code of Criminal Procedure.[62] We held in *Adams v. State* that reversal is necessary only if the reviewing court finds that the substantial rights of the defendant were prejudiced by the trial judge's failure to grant a motion to quash and instituted a three-part test to determine whether reversal is required.[63] Before *Studer*, we stated that an *Adams* analysis under Article 21.19 of the Code of Criminal Procedure does

---

[60] *Gengnagel*, 748 S.W.2d at 229.

[61] *Studer*, 799 S.W.2d at 267.

[62]T EX. CODE CRIM. PROC. ANN. art. 21.19 (Vernon 2009).

[63] 707 S.W.2d 900, 902-03 (Tex. Crim. App. 1986); *see also* TEX. CODE CRIM. PROC. ANN. art. 21.19 (Vernon 2009).

not apply to substance defects.[64]

Though we have intimated that a harm analysis would apply to substance defects,[65] we have never squarely addressed the issue. We note that various courts of appeals have considered what harm analysis would apply.[66] Because the parties have not briefed the issue and the court of appeals has not yet addressed it, we remand this case to the court of appeals to determine what, if any, harm analysis applies.[67]

**Conclusion**

We reverse the judgment of the court of appeals and hold that the information in this case contained a substance defect. We remand the case to the court of appeals to determine what harm analysis, if any, should apply.

DATE DELIVERED: February 24, 2010

---

[64] *Jackson v. State*, 718 S.W.2d 724, 725 n.1 (Tex. Crim. App. 1986), *overruled in part by Studer*, 799 S.W.2d 263, 271.

[65] *See Tita v. State*, 267 S.W.3d 33, 39 (Tex. Crim. App. 2008).

[66] *Compare Tollett v. State*, 219 S.W.3d 593, 600 (Tex. App.—Texarkana 2007, pet. ref'd) (citing *Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App. 1997)) (assuming that a harm analysis under *Cain v. State* is required); *and Flores v. State*, 102 S.W.3d 328, 333 (Tex. App.—Eastland 2003, pet. ref'd) (stating in dicta that substance defects would be reviewed for harmless error under Texas Rule of Appellate Procedure 44.2(b)); *with Sanchez v. State*, 32 S.W.3d 687, 700 (Tex. App.—San Antonio 2000), *rev'd on other grounds*, 120 S.W.3d 359 (Tex. Crim. App. 2003) (holding that if any harm analysis applied, the error would be harmful under any standard of review); *and Thompson v. State*, 44 S.W.3d 171, 183 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (same).

[67] *See Stringer v. State*, 241 S.W.3d 52, 59 (2007).

PUBLISH