**Opinion issued August 21, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————————

## NO. 01-13-00041-CR

———————————————

### ADRIAN DEWAYNE GRAVES, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the County Criminal Court at Law No. 8**
**Harris County, Texas**
**Trial Court Case No. 1825747**

---

## MEMORANDUM OPINION

A jury found appellant, Adrian Dewayne Graves, guilty of the offense of

indecent exposure.[1] After finding true the allegation in an enhancement paragraph

---

[1] *See* TEX. PENAL CODE ANN. § 21.08 (Vernon 2011).

that he had previously been convicted of the offense of indecent exposure, the trial court assessed appellant's punishment at confinement for 100 days. In three issues, appellant contends that the trial court erred in denying his motion to quash the information, admitting identification testimony, and admitting perjured testimony.

We affirm.

## Background

Harris County Sheriff's Office ("HCSO") Detention Officer L. McClain testified that on May 4, 2012, she was assigned to the control center of an area of the Harris County Jail known as "F Pod." Her duties included observing the inmates in their cells from her glass-enclosed station, maintaining order, and alerting officers on the floor, referred to as "rovers," when problems arose. That morning, in her usual custom, McClain awoke the inmates at 7:00 a.m. over an intercom. At approximately 7:30 a.m., she saw appellant standing next to his bunk without his shirt on and with his "penis over the front of his boxers." McClain was able to "see the front part of his body" and his face. He was looking "directly" at her and masturbating. McClain was "offended" and requested assistance over the intercom.

Officer McClain explained that in responding to the F-Pod area, the rovers were required to come through a set of exterior doors that emit a "loud mechanical

sound" as they open and close. She directed the rovers to appellant, who was in cell "C1," by gesturing with her hand at her window in the shape of the letter "C" and then pointing at appellant. McClain denied telling HCSO Deputy U. Harden that when she called appellant "out over the intercom, he ran to the back of his cell . . . because she caught him in the act of doing something and he immediately reacted."

Deputy Harden, who responded to Officer McClain's call, testified that it initially took him several seconds to get through the exterior sets of doors and into the area of appellant's cell. When he arrived at appellant's cell, Harden saw him standing at the back, shirtless, but wearing jumpsuit pants and tennis shoes. The other inmates in the cell were asleep in their bunks. From appellant's cell, Harden could see into the interior of the control center and could hear the exterior doors opening and closing. He explained that, based on the layout of appellant's cell, an inmate standing immediately in front of the bunks would be "about five feet" from the toilet and "about fifteen to twenty feet from the control center." Harden also noted that McClain told him that she saw appellant standing at the toilet in his cell.

HCSO Deputy K. Jones testified that he accompanied Deputy Harden to appellant's cell. He visually communicated with Officer McClain and then went to cell "C." Jones noted that there were three inmates in the cell. Appellant was standing at the back, and the other two were in their bunks. Both Deputies Harden

3

and Jones testified that they escorted appellant from his cell into a hallway, where they checked his wristband and confirmed his identity. And both deputies identified appellant at trial.

### Information

In his first issue, appellant argues that the trial court erred in denying his motion to quash the information because it fails to allege the acts relied upon to constitute the element of recklessness.

We review a trial court's ruling on a motion to quash a charging instrument de novo. *Smith v. State*, 309 S.W.3d 10, 13–14 (Tex. Crim. App. 2010). Generally, a charging instrument that tracks the language of a criminal statute possesses sufficient specificity to provide a defendant with notice of a charged offense. *State v. Edmond*, 933 S.W.2d 120, 128 (Tex. Crim. App. 1996). A motion to quash should be granted only when the language regarding an accused's conduct is so vague or indefinite that it fails to give the accused adequate notice of the acts he allegedly committed. *DeVaughn v. State*, 749 S.W.2d 62, 67 (Tex. Crim. App. 1988).

"A person commits an offense [of indecent exposure] if he exposes . . . any part of his genitals with intent to arouse or gratify the sexual desire of any person, and he is reckless about whether another is present who will be offended or alarmed by his act." TEX. PENAL CODE ANN. § 21.08(a) (Vernon 2011). When, as

4

here, "recklessness" is an element of the offense, the "information, . . . in order to be sufficient in any such case must allege, with reasonable certainty, the act or acts relied upon to constitute recklessness . . . , and in no event shall it be sufficient to allege merely that the accused, in committing the offense, acted recklessly . . . ." TEX. CRIM. PROC. CODE ANN. art. 21.15 (Vernon 2009).

Here, the State, in its third amended information, alleged that appellant

Unlawfully expose[d] part of his genitals, namely penis, to L. McClain with the intent to arouse and gratify the sexual desire of the defendant, and the defendant was reckless about whether another person was present who would be offended and alarmed by the act, to-wit: exposing his penis while facing the station from which jail personnel monitor jail inmates.

(Emphasis omitted.)

In support of his assertion that the charging instrument failed to allege an act of recklessness, appellant relies on *Gengnagel v. State*, 748 S.W.2d 227 (Tex. Crim. App. 1988), *superseded by constitutional amendment on other grounds,* TEX. CONST. art. V, § 12. In *Gengnagel*, the defendant stood accused by information of committing the offense of indecent exposure as follows:

[The defendant] did then and there expose to [the complainant], his genitals with intent to arouse and gratify the sexual desire of the defendant, and the said defendant did so recklessly and in conscious disregard of whether another person was present who would be offended and alarmed by such act, to-wit: exposition of his genitals by the defendant to complainant.

5

*Id.* at 228. On appeal, the defendant argued that the information was defective because it failed to "allege with reasonable certainty the acts relied upon to constitute recklessness." *Id.* (citing TEX. CRIM. PROC. CODE ANN. art. 21.15).

The Texas Court of Criminal Appeals concluded that the information was defective because it failed to inform the defendant of the nature of his alleged recklessness. *Id.* at 230. Although it alleged that the defendant exposed himself to another person, the information did not allege any act or circumstances that would show that his exposition was done in a reckless manner, as required by article 21.15. *Id.*; *see also State v. Rodriguez*, 339 S.W.3d 680, 684 n.17 (Tex. Crim. App. 2011) (explaining State's allegation in *Gengnagel* that "the defendant recklessly exposed his genitals because he exposed his genitals to 'the complainant'" tautological). The court explained that to comply with article 21.15, the State must allege circumstances that indicate a defendant's awareness of the risk of the presence of another person who would be offended by his act of exposing himself and the defendant acted in conscious disregard of that risk. *Gengnagel*, 748 S.W.2d at 230.

In further support of his position, appellant also relies on *Smith v. State*, 309 S.W.3d 10 (Tex. Crim. App. 2010). In *Smith*, as in *Gengnagel*, the information alleged that the defendant

> unlawfully expose[d] his genitals to [the complainant] with intent to arouse and gratify the sexual desire of the Defendant, and the

6

> Defendant was reckless about whether another person was present who would be offended and alarmed by the act, to-wit: the Defendant exposed his penis and masturbated.

309 S.W.3d at 12 (emphasis omitted). The defendant moved to quash the information on the ground that the State had failed to allege acts constituting recklessness, as required by article 21.15. *Id.* at 13. The court of criminal appeals noted that the "information [there] differed from the one in *Gengnagel* only in that it added 'and masturbated,' as opposed to only alleging exposure." *Id.* at 16. And it concluded that the additional language did not cure the defect presented in *Gengnagel*. *Id.* It explained that the information would have sufficiently apprised the defendant of the acts constituting recklessness if the State had alleged that "he exposed himself and masturbated *in a public place*." *Id.* (emphasis added) (explaining that article 21.15 requires that circumstances be alleged that would show exposition was done in reckless manner).

Here, the charging instrument alleges circumstances that show that appellant's exposition was done in a reckless manner, specifically, that he "expos[ed] his penis *while facing the station from which jail personnel monitor jail inmates*." (Emphasis added.) This allegation sufficiently describes circumstances indicating that appellant was aware of the risk that another person was present who would be offended by his act of exposing himself and he acted in conscious disregard of that risk. *See Smith*, 309 S.W.3d at 15–16; *see e.g.*, *Henery v. State*,

7

No. 14-09-00996-CR, 2012 WL 5964394, at *2 (Tex. App.—Houston [14th Dist.] Nov. 29, 2012, no pet.) (mem. op., not designated for publication). We conclude that the information alleges, with reasonable certainty, the act or acts relied upon to constitute recklessness. *See* TEX. CODE CRIM. PROC. ANN. art. 21.15. Accordingly, we hold that the trial court did not err in denying appellant's motion to quash the information.

We overrule appellant's first issue.

### Identification

In his second issue, appellant argues that the trial court erred in denying his motion to suppress Officer McClain's in-court identification of him because it was unreliable and "tainted" by her observation of him at the defense table.

The standard of review pertaining to a trial court's denial of a motion to suppress an in-court identification depends upon the type of question presented to the reviewing court. *Loserth v. State*, 963 S.W.2d 770, 772 (Tex. Crim. App. 1998). We give almost total deference to a trial court's determination of historical facts supported by the record, especially when the trial court's fact findings are based on an evaluation of the credibility and demeanor of the witnesses. *Id.* And we give the same deference to the trial court's rulings on "mixed questions of law and fact," if the resolution of those questions turns on an evaluation of credibility

and demeanor. *Id.* Finally, we review de novo "mixed questions of law and fact" that do not turn on an evaluation of credibility and demeanor. *Id.*

Generally, we apply a two-step analysis to determine the admissibility of an in-court identification and ask (1) whether a pretrial identification procedure was impermissibly suggestive and, if so, (2) whether that procedure created a substantial likelihood of irreparable misidentification. *Barley v. State*, 906 S.W.2d 27, 32–33 (Tex. Crim. App. 1995). "An analysis under these steps requires an examination of the totality of the circumstances surrounding the particular case and a determination of the reliability of the identification." *Id.* at 33.

Officer McClain testified that on the day of the incident, she observed, through the window of the control center, appellant committing the offense from fifteen to twenty feet away from her. She noted that his cell door was open, "all the lights [were] on," there were no objects obstructing her view of him, and she could see his face and the front of his body. McClain explained that she "glanced" at him and turned away, but "could still see from the left side." She requested assistance, and Deputies Harden and Jones arrived within "minutes." McClain identified appellant to the deputies by gesturing with her hand at the window in the shape of a "C," indicating cell C, and then "pointing at [appellant]." The deputies then escorted appellant from his cell to a hallway, where they obtained appellant's name from his identification bracelet. McClain explained that she had seen

9

appellant regularly for two months prior to the incident. And she noted that there was no question that appellant was the person that she saw exposing himself.

During her testimony on the first day of trial, Officer McClain was not asked to identify appellant in the courtroom. On the second day, she testified as follows:

> [State]: Detention Officer McClain, before we started this trial yesterday, did you think that you would be able to recognize the person who was masturbating in a cell in court?
>
> [McClain]: Not until we came in and then I recognized, I remembered who he was.
>
> [State]: So now that you have come in here and recall who he was, could you tell us whether the person who you saw masturbating and looking at you on May 4, 2012 is in the courtroom today?
>
> [McClain]: Yes.
>
> [Defense]: Judge, I'm going to object to this tainted identification. She wasn't able to identify him the day of. Here we are seven months later and there is only one person sitting next to me.

At a hearing outside the presence of the jury, appellant moved to suppress Officer McClain's identification as "tainted," arguing that it was "impermissibly suggestive based on there [was] only one person on trial and he [was] sitting right next to [defense counsel] and she's already testified she wasn't able to identify [appellant] that day." Defense counsel then cross-examined McClain as follows:

> [Defense]: So you testified today that from the date in question you are unable to identify Inmate Graves as the person who was masturbating; is that true?
>
> [McClain]: I didn't know his name.

10

| | |
|---|---|
| [Defense]: | But when they pulled him out of the cell, you said that you were not able to identify the person pulled out of the cell alleged as the same person masturbating on that day? |
| [McClain]: | I knew who he was and where he was located because he was the only one up, but yes, I didn't know what his name was. |

. . . .

| | |
|---|---|
| [Defense]: | At any point in time, when the guards pulled him out of his cell, you never said that's the one who was masturbating. |
| [McClain]: | I told him that was the one, where he was, and I told them he's right there. |
| [Defense]: | Yes, you said which cell and when they pulled him out of the cell you never made a subsequent identification, you never said that the person you just pulled out of that cell was the person who was masturbating. You never did that; did you? |
| [McClain]: | I don't remember, but I told them that's the one right there. I pointed him out. |
| [Defense]: | You pointed to the cell he was in? |
| [McClain]: | No, I saw where he was and he was the one up and so I said that's him. |
| [Defense]: | When he was brought out of the cell by the rovers, you never said that was the man who was masturbating? |

. . . .

| | |
|---|---|
| [McClain]: | No. |
| [Defense]: | You never said that. And prior to trial, did you have an opportunity to see photographs of him, whether it was a mug shot or otherwise? |
| [McClain]: | [Appellant], no. |
| [Defense]: | And when we started this trial, you were sitting here when we made reference to him being named Adrian Graves; is that true? |

11

| [McClain]: | I guess, yes. |
|---|---|
| [Defense]: | . . . so you knew the man sitting next to me is [appellant]? |
| [McClain]: | Yes. |
| [Defense]: | And you knew that because it's been said over and over in this courtroom? |
| [McClain]: | No, because I knew who he was. |

During the State's re-direct, Officer McClain testified that she recognized appellant by his facial features when he walked into the courtroom and not because he was sitting next to defense counsel. She explained that when the rovers came in on the day of the incident, she identified appellant by pointing at him.

On re-cross, the following colloquy took place:

| [Defense]: | Did you have a conversation with the prosecutor between yesterday and today that caused you to feel comfortable identifying the defendant? |
|---|---|
| [McClain]: | No. |
| [Defense]: | Did you and the prosecutor discuss between your testimony yesterday and today whether or not you would make an in court [identification] of the defendant? |
| [McClain]: | No. |
| [Defense]: | So at no point did you talk to the prosecutor and say I didn't identify him yesterday but I can today? |
| [McClain]: | Not to my knowledge. |

The State then asked Officer McClain, "[A]fter you testified yesterday, did you inform [State's counsel] that you would after all be able to identify the

12

defendant in court?" And McClain responded in the affirmative. The following discussion then took place:

> [Defense]: You said after all. Does that mean at some point you were unable to identify him or uncomfortable doing so? At some point between the offense date and today was there a point in time when you were not comfortable identifying—you just said after all.
>
> . . . .
>
> [McClain]: No, I wasn't uncomfortable.
>
> [Defense]: So why did you just tell [State's counsel] I could identif[y] him after all implying there was a period where you couldn't?
>
> [McClain]: I don't remember saying after all. . . .
>
> [Defense]: You just testified that you did.

Appellant argued that Officer McClain's testimony constituted an "impermissibl[y] suggestive in court identification" because she was "unable to identify [appellant] at any point in time" during her testimony, or in her offense report, but later told the prosecutor that she could "do it after all, after she spent an entire day in the courtroom." The State asserted that McClain "wasn't *un*able to identify" appellant before trial. (Emphasis added.) Rather, she testified that she had not looked at any photographs prior to trial and was not sure whether she would recognize appellant until she saw him walk into the courtroom. And she then recognized him by his facial features.

The trial court denied appellant's motion to suppress, finding "sufficient basis" that Officer McClain had made an independent identification of appellant

13

and the matter went to the weight of her testimony and not to its admissibility. And it granted the State's request that the record reflect that McClain had identified appellant.

On appeal, appellant does not assert that Officer McClain's pretrial identification of him was induced by impermissibly suggestive means. Rather, he argues that he was denied due process because her in-court identification of him was unreliable, based on the factors set out in *United States v. Wade*, 388 U.S. 218, 87 S. Ct. 1926 (1967).

"[T]he admission of identification testimony does not violate due process so long as the identification possesses sufficient aspects of reliability." *Garza v. State*, 633 S.W.2d 508, 512 (Tex. Crim. App. 1981) (citing *Neil v. Biggers*, 409 U.S. 188, 199, 93 S. Ct. 375, 382 (1972)); *see also Barley*, 906 S.W.2d at 34 ("Reliability is the linchpin in determining admissibility of identification testimony."). We assess the reliability of an in-court identification by looking to the factors set forth in *Wade*. 388 U.S. 241–42, 87 S. Ct. at 1940. The non-exclusive list of factors include: (1) the prior opportunity to observe the alleged criminal act, (2) the existence of any discrepancy between any pre-lineup description and the defendant's actual description, (3) any identification prior to the lineup of another person, (4) the identification by picture of the defendant prior to the lineup, (5) failure to identify the defendant on a prior occasion, and (6) the

14

lapse of time between the alleged act and the lineup identification. *See id.* at 241, 87 S. Ct. at 1940; *Barley*, 906 S.W.2d at 35 n.8. We also consider the witness's degree of attention and the level of certainty at the time of the confrontation. *See Biggers*, 409 U.S. at 199–200, 93 S. Ct. at 382; *see also Brown v. State*, 29 S.W.3d 251, 254–55 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (applying *Wade* and *Biggers* factors). We consider these factors and all issues of historical fact deferentially in the light most favorable to the trial court's ruling. *Ibarra v. State*, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999). Ordinarily, these factors are then weighed de novo against "the corrupting effect" of the suggestive pretrial identification procedure. *Id.* at 195–96.

Appellant first argues that Officer McClain's identification of him was unreliable because she did not have a good opportunity to see him, as he was "about 20 feet away, looking through both glass and bars," he was in "bad lighting," and she only glanced at him. The record shows that when McClain observed appellant on the day of the incident, "all the lights [were] on," there were no objects obstructing her view of him, and she could see his face and the front of his body. *See Wade*, 388 U.S. at 241, 87 S. Ct. at 1940 (considering opportunity to observe accused). She explained that she "glanced" at him and turned away, but "could still see from the left side." *See Biggers*, 409 U.S. at 199–200, 93 S. Ct. at 382 (considering witness's degree of attention); *Brown*, 29 S.W.3d at 254.

15

Appellant also asserts that Officer McClain did not identify him, "even at the time of the alleged incident." The record shows that McClain identified appellant in his cell to Deputies Harden and Jones by gesturing with her hand at the window in the shape of a "C," indicating cell C, and then "pointing at [appellant]." The deputies then escorted appellant from his cell to a hallway, where they obtained his name from his identification bracelet. McClain testified that she had seen appellant regularly for two months prior to the incident, and she noted that there was no question that appellant was the right person. *See Biggers*, 409 U.S. at 199–200, 93 S. Ct. at 382 (considering level of certainty at time of confrontation). Appellant also complains that there was "no pre-trial lineup." A defendant does not, however, have the right to a pre-trial lineup or photographic array. *See Maxwell v. State*, 10 S.W.3d 785, 787 (Tex. App.—Austin 2000, no pet.) (citing *Sapp v. State*, 476 S.W.2d 321, 323 (Tex. Crim. App. 1972)).

Appellant next asserts that Officer McClain demonstrated her uncertainty by not identifying him in court until the second day of testimony. The record shows, however, that she was not asked to identify appellant on the first day of testimony. Although she expressed initial uncertainty through her testimony on the second day with regard to whether she would recognize appellant after the seven months that had passed between the incident and trial, she testified that her in-court identification of him was based on her memory of the events, specifically, his

16

facial features. Any uncertainty goes to the weight to be afforded her identification testimony and not to its admissibility. *See Garza*, 633 S.W.2d at 513.

Further, Officer McClain's in-court identification of appellant rested on her independent recollection of her observations of him on the day of the incident. In-court testimony of an identification witness is admissible as long as the record clearly reveals that the witness' prior observation of the accused was sufficient to serve as an independent origin for the in-court identification. *Jackson v. State*, 657 S.W.2d 123, 130 (Tex. Crim. App. 1983). Applying the pertinent *Wade* and *Biggers* factors deferentially in the light most favorable to the trial court's ruling, and there being no suggestive pretrial identification procedure alleged, we conclude that McClain's prior observation of appellant was sufficient. *See Ibarra*, 11 S.W.3d at 195; *see also Biggers*, 409 U.S. at 199–200, 93 S. Ct. at 382; *Wade*, 388 U.S. at 241, 87 S. Ct. at 1940; *Brown*, 29 S.W.3d at 254–55.

Relying on *Harrison v. State*, appellant further asserts that his presence at defense counsel's table rendered Officer McClain's in-court identification of him "too unreliable." No. 14-10-00254-CR, 2011 WL 5589532, at *7 (Tex. App.—Houston [14th Dist.] Nov. 17, 2011, no pet.) (mem. op., not designated for publication). In *Harrison*, the defendant argued that because law enforcement officers had failed to conduct a lineup or show a photographic array to the witnesses, any in-court identification of him could only have been based on the

17

fact that the witnesses saw him "in the defendant's chair." *Id.* The court noted that the defendant had failed to cite Texas precedent, and it had found none, holding that a witness's in-court identification of a defendant seated at the defense table constitutes an impermissibly suggestive procedure, which may lead to a very substantial likelihood of irreparable misidentification. *See id.* at \*8; *see also Maxwell v. State*, 10 S.W.3d 785, 787–88 (Tex. App.—Austin 2000, no pet.) (rejecting argument that in-court identification of defendant seated at defense table violates due process); *Shaw v. State*, 846 S.W.2d 482, 485 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd) (concluding in-court identification not rendered unreliable by witness having viewed defendant at defense table prior to making identification at trial).

We hold that the trial court did not err in denying appellant's motion to suppress Officer McClain's testimony identifying appellant as the person she saw committing the offense of indecent exposure.

We overrule appellant's second issue.

## Perjury

In his third issue, appellant argues that the trial court erred in allowing Officer McClain's in-court identification testimony because she "perjured herself on the stand . . . , thus violating his Due Process rights."

A person commits perjury if, with intent to deceive and with knowledge of the statement's meaning, she makes a false statement under oath or swears to the truth of a false statement previously made and the statement is required or authorized by law to be made under oath. *See* TEX. PENAL CODE ANN. § 37.02(a)(1) (Vernon 2011). An offense is aggravated if a false statement is made in connection with an official proceeding and the statement is material. *Id.* § 37.03. "A statement is material, regardless of its admissibility under the rules of evidence, if it could have affected the course or outcome of the official proceeding." *Id.* § 37.04(a).

The State may not obtain a conviction through the use of perjured testimony. *Losada v. State*, 721 S.W.2d 305, 311 (Tex. Crim. App. 1986). Knowing use of perjured testimony violates due process. *Ex parte Castellano*, 863 S.W.2d 476, 479 (Tex. Crim. App. 1993). If the State presents a false picture of the facts by failing to correct its offered testimony when it became apparent that the testimony was false, then the conviction must be reversed. *Losada*, 721 S.W.2d at 311. The defendant bears the burden of showing that the testimony used by the State was in fact perjured. *Id.*

Appellant asserts that Officer McClain "contradicted herself numerous times on the stand, at one point changing her answer regarding whether she informed the State that she would be able to identify [appellant]." And he directs us to

McClain's testimony, discussed above, regarding whether she had discussed with the prosecutor her identification of appellant.

The record shows that Officer McClain was able to identify appellant. She testified that she had not looked at any photographs in the seven months prior to trial and was not sure whether she would recognize appellant until she saw him walk into the courtroom. And McClain then recognized him by his facial features. She did demonstrate confusion between identifying appellant by sight versus identifying him by name. However, confusion or discrepancies in testimony alone do not constitute perjury. *Id*. at 312.

We overrule appellant's third issue.

### Conclusion

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Bland, and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).