PD-0805-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/8/2015 12:59:32 PM
Accepted 7/9/2015 4:22:28 PM
ABEL ACOSTA
CLERK

# IN THE COURT OF CRIMINAL APPEALS
# FOR THE STATE OF TEXAS
# AUSTIN, TEXAS

**TEVIN SHERARD ELLIOTT,**
     **Petitioner**

§
§
§
§
§          NO._____
§
§
§
§

**vs.**

**THE STATE OF TEXAS,**
     **Respondent**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

# PETITION FOR DISCRETIONARY REVIEW
# OF THE COURT OF APPEALS FOR THE
# TENTH DISTRICT OF TEXAS
# NUMBER 10-14-00112-CR

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

WILLIAM A. BRATTON, III
Attorney at Law

One Quadrangle Tower
2828 Routh St., Suite 675
Dallas, Texas 75201
(214) 871-1133 office
(214) 871-0620 fax
State Bar No. 02916300
Email – bill@brattonlaw.com
ATTORNEY FOR PETITIONER
(ON APPEAL ONLY)

FILED IN
COURT OF CRIMINAL APPEALS

July 9, 2015

ABEL ACOSTA, CLERK

# TABLE OF CONTENTS

Page

INDEX OF AUTHORITIES.................................................................................................-iii-

CERTIFICATE OF INTERESTED PERSONS................................................................2

STATEMENT REGARDING ORAL ARGUMENT.......................................................3

STATEMENT OF THE CASE............................................................................................4

STATEMENT OF PROCEDURAL HISTORY..............................................................13

GROUNDS FOR REVIEW...............................................................................................13

REASON FOR REVIEW I.................................................................................................14

> The Court of Appeals' decision incorrectly upheld the conviction
> of Petitioner by holding that the Petitioner was not denied his
> Sixth Amendment Right to effective assistance of counsel at trial.

REASON FOR REVIEW II...............................................................................................19

> The Court of Appeals' decision incorrectly upheld the conviction of
> Petitioner by holding that the State did not present perjured
> testimony through Jasmin Hernandez regarding her state of
> sobriety during the events alleged in the Indictment.

PRAYER...............................................................................................................................21

CERTIFICATE OF SERVICE.........................................................................................22

# INDEX OF AUTHORITIES

## CASES:

Ex parte Chabot, 300 S.W.3d 768 (Tex. Crim. App. 2009)........................................ 17, 19

Ex parte Ghahremani, 332 S.W.3d 470 (Tex. Crim. App. 2011) ........................... 17, 19

Ex parte Napper, 322 S.W.3d 202 (Tex. Crim. App. 2010) .................................... 17, 19

Hernandez v. State, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999) ............................ 13

Johnston v. State, 145 S.W.3d 215 (Tex.Crim.App. 2004) .......................................... 16

Menefield v. State, 363 S.W.3d 591 (Tex. Crim. App. 2012) ...................................... 15

Nava v. State, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013) ..................................... 13

Strickland v. Washington, 466 U.S. 668 (1984) ............................................... 13, 15, 16


## STATUTES:

Tex. R. App. Proc. 39.1 ................................................................................................... 3

Tex. R. App. Proc. 66.3(b) and (c)............................................................................... 17

Tex. R. Aapp. Proc. 66.3(c) and (f) ............................................................................ 13

Tex. R. Evid. 404(b) ..................................................................................................... 16

Tex. R. Evid. 401 .......................................................................................................... 16

Tex.R.Evid. 403 ............................................................................................................ 16

# IN THE COURT OF CRIMINAL APPEALS
## FOR THE STATE OF TEXAS
## AUSTIN, TEXAS


| | | |
|---|---|---|
| **TEVIN SHERARD ELLIOTT,** | § | |
| Petitioner | § | |
| | § | |
| | § | |
| vs. | § | NO._____ |
| | § | |
| | § | |
| **THE STATE OF TEXAS,** | § | |
| Respondent | § | |


**\* \* \* \* \* \* \* \* \* \* \* \* \* \* \***

## PETITION FOR DISCRETIONARY REVIEW
## OF THE COURT OF APPEALS FOR THE
## TENTH DISTRICT OF TEXAS
## NUMBER 10-14-00112-CR

**\* \* \* \* \* \* \* \* \* \* \* \* \* \* \***


**TO THE HONORABLE JUDGES OF SAID COURT:**

NOW COMES **TEVIN SHERARD ELLIOTT**, Petitioner herein and respectfully petitions the Honorable Court to review the Opinion of the Court of Appeals for the Tenth District of Texas at Waco.

## *CERTIFICATE OF INTERESTED PERSONS*

The undersigned Counsel of Record certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the Court may evaluate possible disqualification or recusal.

| | |
|---|---|
| District Judge | Honorable Matt Johnson<br>54th Judicial District Judge |
| Defendant/Petitioner | Tevin Sherard Elliott |
| Appeal Attorney for Petitioner | William A. Bratton, Dallas |
| Trial Attorney for Petitioner | Jason Darling, Waco |

McLennan County, Texas

| | |
|---|---|
| Trial Attorney for the State | ADA Hilary LaBorde, Waco |
| | ADA Robert Moody, Waco |
| Appeal Attorney for State | DA Abel Reyna, Waco<br>Sterling Harmon, Waco |

## *STATEMENT REGARDING ORAL ARGUMENT*

Texas Rule of Appellate Procedure 39.1 states:

A party who has filed a brief and who has timely requested oral argument may argue the case to the court unless the court, after examining the briefs, decides that oral argument is unnecessary for any of the following reasons:

> (a) the appeal is frivolous;
>
> (b) the dispositive issue or issues have been authoritatively decided;
>
> (c) the facts and legal arguments are adequately presented in the briefs and record;      or
>
> (d) the decisional process would not be significantly aided by oral argument.

Petitioner would urge the court that none of the reasons to deny oral argument set forth in Tex. R. App. Proc. 39.1 apply to the instant appeal. The factual issues in the appeal, as applied to the legal standards, are complicated and oral argument would assist the court in its decisional process. Particularly, Ground for Review I, relating to the denial of effective assistance of counsel. The Ground for Review requires a complete consideration of the trial strategy, as well as Petitioner's Points of Error I – IV and VI – X in Petitioner's Appellant's Brief as they relate to the conduct of the defense of Petitioner.

## STATEMENT OF THE CASE

### Evidence for the State:

Jasmin Hernandez testified that she was the "Jane Doe" alleged in the Indictment pending against the Petitioner. (R.R.IV 29). In the spring of 2012, Ms. Hernandez was a second semester freshman at Baylor living in Waco. (R.R.IV 30).

On April 14, 2012, a friend of Ms. Hernandez who lived in the dorm with her invited her to go to a party. (R.R.IV 39). Ms. Hernandez did not remember the name of the apartment complex but Ms. Hernandez rode to the party with another friend by the name of Shannon. (R.R.IV 41). When she arrived at the party, everyone was "just socializing". (R.R.IV 41). While at the party, Ms. Hernandez testified that she had "maybe 2 cups" of a punch and a "shot of vodka". (R.R.IV 42). She was introduced to her friend Catrina's boyfriend, the Petitioner. (R.R.IV 42). All of the girls who went with Ms. Hernandez had their pictures made with the Petitioner. (R.R.IV 42).

Later in the evening, after Ms. Hernandez had gone to the bathroom, she came out and didn't see any of her friends. (R.R.IV 47). The Petitioner was nearby and offered to help Ms. Hernandez look for her friends. (R.R.IV 47). They began looking inside the apartment, when Ms. Hernandez

testified the Petitioner offered to take her outside and look for them. (R.R.IV 48). The Petitioner was "more guiding and leading" Ms. Hernandez outside. (R.R.IV 49). Ms. Hernandez testified that she would not have gone outside but for the Petitioner leading her outside. (R.R.IV 49).

After they went out the front door, there were other people outside, but Ms. Hernandez and the Petitioner kept walking further from them. (R.R.IV 50). The Petitioner then picked Ms. Hernandez up and carried her across the street to a closed area. (R.R.IV 50-52). The Petitioner had taken her to a recreational shack and then put her on the ground outside of the shack. (R.R.IV 52). Ms. Hernandez testified that the Petitioner took down her pants. (R.R.IV 52). Ms. Hernandez was shouting out "I'm gay. I'm gay." and to take her back to the party she needed to see her friends. (R.R.IV 54).

Ms. Hernandez then testified that the Petitioner began having sex wherein his penis penetrated her vagina. (R.R.IV 59). When the Petitioner finished he then allowed her to get up and put herself together. (R.R.IV 62). The Petitioner then led her to the swimming pool area where he again pulled down her pants and penetrated her while he pressed her against a fence. (R.R.IV 62).

After the Petitioner finished, Ms. Hernandez testified that he was ready to go and she stated she couldn't find her shirt. (R.R.IV 65). The Petitioner then looked around and found her shirt and then they returned to the party. (R.R.IV 65).

After Ms. Hernandez returned to the party she told her friends that she had been "raped" and her friend Shannon took her straight from the party to the hospital. (R.R.IV 70).

At the Hillcrest Hospital, Michele Davis, who was director of the Sexual Assault Nurse Examiner Program, conducted a sexual assault examination on Ms. Hernandez. (R.R.III 56-61). During the course of the examination, Ms. Davis obtained information from Ms. Hernandez which she wrote verbatim into her report. (R.R.III 72). She also noted any injuries which she found in her report and collected evidence. (R.R.III 63-65).

Bradley Skaggs, a patrol officer with the Waco Police Department received a call to check with a patient at Hillcrest Hospital on April 15, 2012. (R.R.III 25-27). The individual which he met was Jasmin Hernandez. (R.R.III 27).

When Officer Skaggs met with Ms. Hernandez, she seemed kind of upset and had mud on her. (R.R.III 27). Officer Skaggs also believed that she had been drinking previous to his encounter with her. (R.R.III 27).

Ms. Hernandez advised Officer Skaggs that she was at the Aspen Heights Apartment and briefly told the officer that she had been assaulted behind the building that was beside a volleyball court. (R.R.III 32). She gave a description that had a picket fence around the deck behind the building. (R.RIII 32). She also mentioned a swimming pool right there also and a walkway between the volleyball court and this building. (R.R.III 32-33).

Officer Skaggs left the hospital and went over to the area described to him by Ms. Hernandez and found a camouflage-looking iPod and an earring in the mud. (RR.III 33).

Lesley Johnson, a scientist with the Texas Department of Public Safety Crime Laboratory in Waco performed test looking for evidence of biological material that could contain DNA that could compare to a known profile from a suspect or victim on items submitted to her. (RR.IV 11-12). Ms. Johnson was not the chemist who actually tested the DNA in the case that was performed by Erin Casmus. (RR.IV 12). Tests were run on a vaginal swab, anal swab, oral swab, known sample of Appellant, known sample of Ms. Hernandez, an earring and some panties. (R.R.IV 12-18).

The presumptive test was negative on the vaginal swab and the panties. (R.R.IV 15). The earring was also tested and no profile was

obtained. (R.R.IV 18). On the anal swab, there was a mixture of the victim and one unknown person on the DNA. (R.R.IV 21). A test of the Appellant's known sample and the unknown DNA resulted in the fact that the Appellant could not be excluded. (R.R.IV 23).

Shannon Valverde, drove a car which took Ms. Hernandez to the party on April 14, 2012. (R.R.IV 110). At the party, Ms. Valverde was briefly introduced to the Petitioner by her friend "Cat". (R.R.IV 111). At one point, Ms. Valverde and Ms. Hernandez left the party. (R.R.IV 112). They later came back because they got a call from "Cat" that they had lost Christina and they wanted her to come back and help them find her. (R.R.IV 113). Ms. Valverde couldn't remember how long they were looking for Christina, but they finally found her. (R.R.IV 113). After they found Christina, Ms. Valverde saw Ms. Hernandez around the fence area closed to where she had parked her car. (R.R.IV 115). Ms. Hernandez was crying hysterically. (R.R.IV 115). When asked what the matter was, Ms. Hernandez told Ms. Valverde she had been raped. (R.R.IV 115). Ms. Valverde then took the action of taking Ms. Hernandez directly to the hospital to get her out of the situation. (R.R.IV 115).

## Evidence for the Defense:

The Petitioner testified that on April 14, 2012, he was a member of the Baylor football team and they had just finished their spring football game. (R.R.IV 139). It was also teammate, Glasco Martin's, birthday. (R.R. IV 139). There was going to be a party at Mr. Martin's apartment that evening at the Aspen Heights Apartment Complex. (R.R.IV 140). The Petitioner drove he and his brother to the party. (R.R.IV 140). At the party, the Petitioner saw a girl named "Cat" that he had been seeing. (R.R.IV 141). The Petitioner invited "Cat" to the party but didn't know she was going to bring all of her friends with her. (R.R.IV 141).

"Cat" and all of her friends arrived about ten or fifteen minutes after the Petitioner arrived. (R.R.IV 142). They all were introduced to the Petitioner and began having pictures made with him. (R.R.IV 143).

Later, the Petitioner danced with "Cat" and also with Ms. Hernandez. (R.R.IV 144). "Cat" went off somewhere and the Petitioner was left dancing with Ms. Hernandez. (R.R.IV 144). At one point, Ms. Hernandez grabbed the Petitioner's hand and went to the bathroom area. (R.R.IV 145). After she finished she began looking for her friends whom they could not find. (R.R.IV 145). Ms. Hernandez then grabbed the Petitioner's hand and pulled

him outside saying that she wanted to go outside to see if she could find her friends. (R.R.IV 146).

After they got outside, Ms. Hernandez wanted to walk down the street, she grabbed his hand and they were walking when she jumped on his waist.She put her legs around Petitioner's waist and was kissing the Petitioner all over the neck and ear. (R.R.IV 147). The Petitioner continued walking for about another 30 yards and stopped by the side of the basketball court. (R.R.IV 148). The Petitioner laid her down and they started kissing and making out and she began to pull her own clothes off. (R.R.IV 149). The Petitioner and Ms. Hernandez began having sex, but saw there was another individual nearby and began to pull their clothes back on. (R.R.IV 149).

The Petitioner and Ms. Hernandez went to the back of a building and again began engaging in sexual contact. (R.R.IV 151). Once they had finished behind the building, they then moved to the pool area. (R.R.IV 153). They again engaged in sex acts by the pool. (R.R.IV 153-54). When they had finished, they got dressed and went back to the party. (.RR.IV 155).

When the Petitioner and Ms. Hernandez first left the party and she jumped up on him with her legs around his waist, the Petitioner's cellphone began recording video and audio for about a minute. (R.R.IV 158).

Tarniane Elliott, the Petitioner's brother, testified that on April 14, 2012, he went with the Petitioner to a party at the Aspen Heights Apartments. (R.R.IV 190-91). At the party, Mr. Elliott observed his brother and "Cat" with her friends. (R.R.IV 191).

Mr. Elliott saw his brother dancing with "Cat" and her friends including Ms. Hernandez. (R.R.IV 192). He described Ms. Hernandez dancing with his brother as "grinding, gyrating". (R.R.IV 192). He later saw Ms. Hernandez with his brother's hand leading him out of the door. (R.R.IV 193).

## Rebuttal Evidence for the State:

Jordan Rhodes, Kelsey Ehlares and Tori Diamond were called by the State to testify as to attempted and actual sexual encounters which each of the individuals had with the Petitioner on different occasions. Each of the individuals testified that the encounters they testified to were nonconsensual. (R.R.IV 211, 249, V 21).

## Rebuttal Evidence for the Defense:

Antwan Goodley, testified that he was a football player for Baylor University and knew the Petitioner as a teammate. (R.R.V 37). Mr. Goodley went to a party at Glasco Martin's in the middle of April, 2012, the same day as the spring football game. (R.R.V 37-38).

Mr. Goodley saw the Petitioner at the party dancing with a girl who was "grinding all up on him". (R.R.V 38). Ms. Goodley then saw the Petitioner and the girl leave the dance floor after she grabbed his hand and walked him out the door. (R.R.V 39). He testified that the girl did not appear frightened or scared. (R.R.V 39).

John Rozyskie, a detective with the Waco Police Department, testified that all of the reports made by Jordan Rhodes, Kelsey Ehlares and Tori Diamond did not result in the arrest of the Petitioner. (R.R.V 34). Charlotte Matthews, a detective with the Waco Police Department, investigated a report made by Jordan Rhodes. (R.R.V 49). The result of her investigation was that the complaint was unfounded. (RR.V 60). She further reviewed a complaint made by Tori Diamond, and saw that the investigation took no action on her allegations other than to issue a Class C ticket for Assault. (R.R.V 73).

## STATEMENT OF PROCEDURAL HISTORY

On April 23, 2015, the Court of Appeals for the Tenth District of Texas at Waco affirmed the judgment of conviction. (See Appendix "A"). Petitioner filed a Motion for Rehearing on May 8, 2015. On May 28, 2015, the Court of Appeals for the Tenth District of Texas at Waco denied Petitioner's Motion for Rehearing. (See Appendix "B").

## GROUNDS FOR REVIEW

### I.

**The Court of Appeals' decision incorrectly upheld the conviction of Petitioner by holding that the Petitioner was not denied his Sixth Amendment Right to effective assistance of counsel at trial.**

### II.

**The Court of Appeals' decision incorrectly upheld the conviction of Petitioner by holding that the State did not present perjured testimony through Jasmin Hernandez regarding her state of sobriety during the events alleged in the Indictment.**

## REASONS FOR REVIEW

## I.

**The Court of Appeals' decision incorrectly upheld the conviction of Petitioner by holding that the Petitioner was not denied his Sixth Amendment Right to effective assistance of counsel at trial.**

## REASON FOR REVIEW:

Petitioner would show the Court that discretionary review should be granted based upon **TEX. R. APP. PROC. 66.3(c) and (f)** in that the court of appeals has written a decision in conflict with the Court of Criminal Appeals and the Supreme Court of the United States; **Strickland v. Washington**, 466 U.S. 668, (1984); **Nava v. State**, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013); **Hernandez v. State**, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999), and has so far departed from the accepted and usual course of judicial proceedings as to call for an exercise of the Court of Criminal Appeals' power of supervision..

## ARGUMENT:

On original submission, the panel opinion of the Court of Appeals held that Petitioner's Point of Error XI, complaining of the denial of effective assistance of counsel to the Petitioner at trial, was not error because the "trial court did not abuse its discretion in denying the Appellant's Motion for New Trial on this ground for ineffective assistance of counsel."

The Court's decision focused primarily on two issues. The first issue was the complete absence of any acknowledgment of a gap in the apartment's surveillance video at the time the Petitioner and Jasmin Hernandez would have been at the swimming pool. The second issue was the trial counsel's decisions to have the Petitioner testify at trial.

The court summarily dismisses the allegations of the Petitioner that the trial counsel failed to cross examine the victim by her written statement and Points of Error I – IV and VI - X. Each of the Points of error were handled procedurally by the court stating that no proper objection was raised at trial by Petitioner's trial counsel. The Court of Appeals fails to consider all of the deficiencies of counsel clearly demonstrated by the appellate record.

The Petitioner attempted to clearly demonstrate failures of counsel's performance not in the appellate record through the hearing on the Motion for New Trial. The Petitioner further demonstrated counsel's deficiencies through the acts performed by counsel during the course of the trial that were contained within the record. The Court's holdings in Points of Error I-IV and VI - X show the complete failure of an objective standard of reasonableness of the performance of counsel.

To obtain relief for ineffective assistance of counsel, an Appellant must establish, by a preponderance of the evidence, that: (1) trial counsel's

performance fell "below an objective standard of reasonableness", and (2) there was a reasonable probability that the result of the proceedings would have been different but for trial counsel's deficient performance. **Strickland v. Washington**, 466 U.S. 668 (1984); **Menefield v. State**, 363 S.W.3d 591 (Tex. Crim. App. 2012).

The Court's dismissal of the failure of trial counsel to exploit the unexplained gap in the surveillance video that would have demonstrated the activities of the Petitioner and Jasmin Hernandez at a critical point during the events of the evening, was by a summary statement that "the state did not notice the gap until it was pointed in Elliott's Motion for New Trial. It did not think the video was very important. By affidavit, trial counsel for Elliott stated that after viewing the video for trial, he did not find anything to contradict Jasmin's testimony or that would be beneficial for the defense." A gap in the surveillance video at the critical time could never be regarded by any competent counsel as not beneficial for the defense. Further the State's view of the gap is of no consequence.

The decision to have the Petitioner testify was handled by the Court by stating that "the trial judge is the sole judge of the credibility of the witnesses; he could have disbelieved Elliott and believed trial counsel's testimony." Clearly, a determination of credibility is important, but the Court cannot

discount the consequences the Petitioner faced by being placed on the witness stand. The State cross examined the Petitioner regarding three separate, unrelated, remote instances of conduct that the Petitioner had with three separate women. This conduct was introduced as extraneous offenses under **Tex. R. Evid. 404(b).** (R.R.IV 203-233, 234-263, V 7-32). None of these instances would have qualified as properly admissible under **Tex. R. Evid. 404(b) and 403,** because **Tex. R. Evid. 404(b)** states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." **Johnston v. State,** 145 S.W.3d 215 (Tex.Crim.App. 2004). **Tex.R.Evid. 403** provides that even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . ." " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." **Tex. R. Evid. 401.** Further, the counsel for the Petitioner did not object to any of this testimony as evidence by the Court's handling of Petitioner's Points of Error VI, VII, VIII on direct appeal.

The court's job is to review the performance of Petitioner's counsel during the course of the trial to determine whether it fell "below an objective

standard of reasonableness" and that there is a "reasonable probability that the result of the proceedings would have been different but for trial counsel's deficient performance." **Strickland v. Washington**, 466 U.S. 668 (1984). The court's attempt to restrict the determination of counsel's performance to the presentation of evidence at the Motion for New Trial without reviewing the entire performance of defense counsel during the course of the trial is too restrictive a view. It is Petitioner's position that an overall view of counsel's performance, as demonstrated by the hearing on the Motion for New Trial as well as the performance during the course of trial as demonstrated by the trial record, shows a deficient level of performance below an objective standard of reasonableness to the extent that it would be an intellectual injustice and a farce to hold that Petitioner was not prejudiced by counsel's performance.

## II.

**The Court of Appeals' decision incorrectly upheld the conviction of Petitioner by holding that the State did not present perjured testimony through Jasmin Hernandez regarding her state of sobriety during the events alleged in the Indictment.**

## REASON FOR REVIEW:

Petitioner would show the Court that discretionary review should be granted based upon **TEX. R. APP. PROC. 66.3(b) and (c)** in that the Court of Appeals has written a decision in conflict with the Court of Criminal Appeals; **Ex parte Chabot**, 300 S.W.3d 768 (Tex. Crim. App. 2009); **Ex parte Napper**, 322 S.W.3d 202 (Tex. Crim. App. 2010); **Ex parte Ghahremani**, 332 S.W.3d 470 (Tex. Crim. App. 2011), and has decided an important issue that has not been settled by the Court of Criminal Appeals.

## ARGUMENT:

On original submission, the panel opinion of the Court of Appeals held that Petitioner's Point of Error V, complaining of the knowing use of perjured testimony by the State in order to obtain the Petitioner's conviction, was not error. As stated by the court, Jasmin Hernandez "thought she was not intoxicated at the party and ... (the) State thought she was "drunk" when she wrote a statement ... (were)

inconsistencies that do not create a false impression of sobriety to the jury."

As the Court pointed out, Jasmin Hernandez testified that she had "maybe 2 cups" of a punch with alcohol and a shot of vodka at the party (R.R.IV 42); and that she had a "high tolerance for alcohol" and did not think she was intoxicated. (R.R.IV 82-83). She told the nurse performing the sexual assault examine that she did not have anything to drink within the last twelve hours. (R.R.IV 74).

In the face of this testimony presented by the State through the complaint, Jasmin Hernandez, the prosecutor who presented the testimony, stated that her numerous inconsistencies between her trial testimony and written statement were because she was "drunk when she wrote the statement." (R.R.IV 44).

The requirement of testimony in order to constitute a violation of due process under federal law, is that the State must knowingly use false testimony **Ex parte Chabot**, 300 S.W.3d 768 (Tex. Crim. App. 2009); **Ex parte Napper**, 322 S.W.3d 202 (Tex. Crim. App. 2010). The term "perjury" is this context requires proof that the testimony "gives the trier a fact a false impression," but it does not require proof of

elements of "perjury" as that term is defined in the Penal Code. **Ex parte Ghahremani,** 332 S.W.3d 470 (Tex. Crim. App. 2011).

The Court dismisses the inconsistency between the knowledge of the prosecutor presenting the testimony and the testimony of Jasmin Hernandez by stating that the use of the testimony that she was not intoxicated and the State's knowledge that she was "drunk" when she wrote the statement does not create a false impression of sobriety to the jury. It is impossible to say that the victim's own testimony that she was <u>not</u> intoxicated when the State knew that she <u>was</u> intoxicated does not create a false impression to the jury.

*PRAYER*

WHEREFORE, PREMISES CONSIDERED, Petitioner prays that this Petition for Discretionary Review be in all things GRANTED.

Respectfully submitted,

/s/WILLIAM A. BRATTON III
**WILLIAM A. BRATTON III**
2828 Routh, Suite 675-LB10
Dallas, Texas 75201
(214) 871-1133
(214) 871-0620 fax
State Bar No. 02916300
Email – bill@brattonlaw.com
**ATTORNEY FOR PETITIONER
(ON APPEAL ONLY)**

## *CERTIFICATE OF SERVICE*

I hereby certify that a true and correct copy of the above and foregoing

Petition for Discretionary Review was delivered to the District Attorney of

McLennan County, Texas, and United States Mail to the State Prosecuting

Attorney, Austin, Texas, on this the 1ST day of July, 2015.

/s/WILLIAM A. BRATTON III
**WILLIAM A. BRATTON III**
**ATTORNEY FOR PETITIONER**
**(ON APPEAL ONLY)**

# APPENDIX "A"



IN THE
TENTH COURT OF APPEALS

No. 10-14-00112-CR

TEVIN SHERARD ELLIOTT,

Appellant

v.

THE STATE OF TEXAS,

Appellee

From the 54th District Court
McLennan County, Texas
Trial Court No. 2012-1543-C2

MEMORANDUM OPINION

Tevin Sherard Elliott was a college football player. He attended a friend's party at the clubhouse of an apartment complex. Jasmin Hernandez attended the same party with some of her friends. She met Elliott for the first time at the party. After socializing and having a few drinks with her friends, Jasmin went to the bathroom. When she returned, she could not find her friends. Elliott offered to help her find them and led her out the back door of the clubhouse to the pool and recreational area of the complex. Jasmin protested. Elliott carried Jasmin to a muddy slope where Elliott sexually

assaulted her. After putting their clothes back on, Elliott carried Jasmin to another part of the recreational area and sexually assaulted her again. Afterwards, Jasmin found her friends and, crying, told them what happened. She was taken to the hospital where she gave a statement about what happened and had a sexual assault examination. Elliott asserted that the sexual conduct was consensual.

After a jury trial, Elliott was convicted of two counts of sexual assault. *See* TEX. PENAL CODE ANN. § 22.011 (West 2011). Because we overrule each of Elliott's issues on appeal, the trial court's judgments are affirmed.

## SUFFICIENCY OF INDICTMENT

In his first issue, Elliott asserts that the indictment was facially insufficient because it failed to allege with particularity the manner and means for the lack of consent of the complainant. Specifically, he contends he was not properly advised which of the 11 ways in which a sexual assault can occur without the victim's consent.

Texas law requires the defendant to object to any alleged error in the indictment before the day of trial and certainly before the jury is empaneled. *Teal v. State*, 230 S.W.3d 172, 177 (Tex. Crim. App. 2007). The relevant statute provides:

> (b) If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding. Nothing in this article prohibits a trial court from requiring that an objection to an indictment or information be made at an earlier time in compliance with Article 28.01 of this code.

TEX. CODE CRIM. PROC. art. 1.14 (West 2005).

Elliott did not object to the sufficiency of the indictment prior to the day of trial. He raises this issue for the first time on appeal. However, we still need to determine whether the indictment is constitutionally sufficient before applying the waiver doctrine set out in the statute. *Teal v. State*, 230 S.W.3d 172, 180-81 (Tex. Crim. App. 2007). The question to be asked is: Can the district court and the defendant determine, from the face of the indictment, that the indictment intends to charge a felony or other offense for which a district court has jurisdiction? *Id.* at 180. If so, a defendant must make a pretrial objection to a substantive defect in the information or indictment or forfeit the right to complain about it on appeal. *Smith v. State*, 309 S.W.3d 10, 18 (Tex. Crim. App. 2010).

Here, Elliott was charged in the indictment with two counts of sexual assault, both alleging that on April 15, 2012, Elliott "intentionally or knowingly" caused the penetration of the sexual organ of Jane Doe,[1] by Elliott's sexual organ, without Jane Doe's consent. It is clear that the indictment intended to charge Elliott with sexual assault. Sexual assault is a felony and all of the necessary elements were pled. Pleading the manner and means of vitiating consent are not necessary elements of sexual assault. *See Moss v. State*, No. 07-12-00067-CR, 2013 Tex. App. LEXIS 9715, 9 (Tex. App.—

---

[1] Jane Doe was the pseudonym for the complainant, Jasmin Hernandez, which was used in the indictment.

Amarillo Aug. 2, 2013, pet. ref'd) (not designated for publication). The trial court and defendant could conclude that the indictment charged a felony and the court had jurisdiction of that offense. Accordingly, to preserve this issue for appellate review, Elliott needed to object to the indictment prior to the day of trial. Because he did not, his complaint on appeal is waived; and his first issue is overruled.

CHALLENGE TO VENIRE MEMBER

Elliott next contends that the trial court erred in refusing to excuse venire member 14 for cause due to that venire member's inability to follow the law.

A defendant may challenge a potential juror for cause if he is biased or prejudiced against the defendant or the law on which the State or defendant is entitled to rely. *Comeaux v. State*, 445 S.W.3d 745, 749 (Tex. Crim. App. 2014); *Gardner v. State*, 306 S.W.3d 274, 295 (Tex. Crim. App. 2009). Elliott does not point to any place in the record where he made a challenge to venire member 14. And we have not found a challenge in the record either. Although to establish *harm* for an erroneous denial of a challenge for cause, the defendant must show on the record that: (1) he asserted a clear and specific challenge for cause; (2) he used a peremptory challenge on the complained-of venire member; (3) his peremptory challenges were exhausted; (4) his request for additional strikes was denied; and (5) an objectionable juror sat on the jury, *see Comeaux*, 445 S.W.3d at 749; *Davis v. State*, 329 S.W.3d 798, 807 (Tex. Crim. App. 2010), when no challenge at all is made to a juror, the issue of whether the juror is challengeable for

cause has not been preserved. *See* Tex. R. App. P. 33.1. Elliott does not argue that the trial court should have, *sua sponte*, excused the venire member. *See Warren v. State*, 768 S.W.2d 300, 303 (Tex. Crim. App. 1989) ("It is well settled that a trial judge should not on his own motion excuse a prospective juror for cause unless the juror is absolutely disqualified from serving on the jury.").

Regardless of whether or not the venire member was challengeable for cause, Elliott did not challenge venire member 14 for cause at all, and his complaint on appeal is not preserved. Elliott's second issue is overruled.

## PERJURED TESTIMONY

In his fifth issue, Elliott asserts that his due process rights under the Fourteenth Amendment to the United States Constitution were violated by the State's knowing use of perjured testimony. Elliott alleges that the State knowingly presented perjured testimony regarding Jasmin's level of intoxication the night of the assaults.

To constitute a violation of due process under Federal precedent, the State must knowingly use false testimony. *Ex parte Ghahremani*, 332 S.W.3d 470, 478 (Tex. Crim. App. 2011). There is no requirement that the offending testimony be "criminally perjurious;" it is sufficient if the witness's testimony gives the trier of fact a false impression. *Id.* at 477. The appellant bears the burden of showing that the testimony used by the State was, in fact, perjured. *Losada v. State*, 721 S.W.2d 305, 311 (Tex. Crim. App. 1986).

The knowing use of false testimony violates due process when there is a "reasonable likelihood" that the false testimony affected the outcome. *Id.* at 478. In other words, the false testimony must have been material. *Id.* A finding of materiality obviates the need to conduct a separate harmless error analysis on direct appeal. *Ex parte Fierro,* 934 S.W.2d 370, 373 (Tex. Crim. App. 1996).

*Trial Testimony*

Jasmin testified that she socialized at the party and had "maybe two cups" of a punch with alcohol in it. She stated that she had a shot of vodka at the party as well. Further, she stated that she had a high tolerance for alcohol and did not think she was intoxicated at the party. The State qualified her statement by asking if she was so intoxicated she could not walk. Jasmin replied that she could walk. The officer who initially responded to the hospital did not think Jasmin was intoxicated.[2] The nurse who performed the sexual assault exam on Jasmin several hours later did not recall noticing a smell of alcohol on Jasmin. The nurse noted, however, that when she asked Jasmine if she had anything alcoholic to drink within the last 12 hours, Jasmine replied she had not.

On cross-examination, Jasmin stated she did not recall telling the officer to whom she gave a statement that she had three cups of punch and two shots of vodka. Jasmin also did not recall telling the nurse that she had not had anything to drink in the last

---

[2] This officer was not the officer who took Jasmin's statement. The officer who took the statement was not asked whether he thought Jasmin was intoxicated.

twelve hours. She thought she had told the nurse that she had drank an alcoholic beverage within 12 hours prior to the exam.

*Motion for New Trial*

At the hearing on the motion for new trial, one of the prosecutors was called to testify and was questioned about why the State did not let trial counsel know there was a 30 minute gap in the apartment complex surveillance video provided to the defense. The prosecutor explained that she did not notice the gap until it was pointed out in Elliott's motion for new trial. She also explained that she did not think the missing portion, which potentially was of the pool area, was relevant because based on what Jasmin had told her, it would not have shown either of the sexual assaults. When confronted with Jasmin's statement to police that she was carried to the pool area where she was again sexually assaulted, the prosecutor replied that she read the statement after talking to Jasmin and did not think it was inconsistent with Jasmin's allegation that the second act occurred against a fence. The prosecutor still did not believe the missing video would show the second act. On re-direct, the prosecutor explained that what was relevant to her was the totality of the evidence, not just the surveillance video. When Elliott's counsel noted that Jasmine had "said a lot of things" in her statement, the prosecutor responded, "Well, she was also drunk when she wrote that statement."

*Application*

This last statement by the prosecutor is what Elliott relies on to assert that the

State knowingly presented perjured testimony. We disagree. Clearly, Jasmin had been drinking at the party. No one testified otherwise. She had two or three cups of an alcoholic punch and one or two shots of vodka. That Jasmin thought she was not intoxicated at the party and the State thought she was "drunk"[3] when she wrote a statement with inconsistencies does not create a false impression of sobriety to the jury.

Elliott's fifth issue is overruled.

## PRESERVATION OF COMPLAINTS

By his third issue, Elliott argues the trial court erred in allowing the State to reopen voir dire at the conclusion of Elliott's counsel's voir dire examination. Elliott cites no authority for the proposition that the State cannot reopen voir dire. Thus, this issue is improperly briefed and presents nothing for review. *See* Tex. R. App. P. 38.1(i); *Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000). Regardless, there was no objection to the State's action. Accordingly, error, if any, is not preserved. Tex. R. App. P. 33.1. Elliott's third issue is overruled.

Elliott contends in his fourth issue that the trial court erred in limiting Elliott's cross-examination of a witness in violation of Elliott's Fifth, Sixth, and Fourteenth Amendment rights. Specifically, Elliott contends he was not permitted to cross-examine the witness regarding a prior statement she had made. There is nothing in the record that indicates the trial court would not allow counsel to cross-examine the witness

---

[3] There was no explanation as to what the prosecutor meant by "drunk."

regarding the statement. There were two discussions in chambers and off the record but we do not know what occurred during those discussions. Further, no offer of proof was made. Accordingly, this issue is not preserved, and Elliott's fourth issue is overruled. *See* TEX. R. APP. P. 33.1.

In issues six, seven, and eight, Elliott asserts the trial court erred in allowing the rebuttal testimony of three witnesses. Specifically, he contends that none of the witnesses' testimony was sufficient to establish a "modus operandi" for extraneous offenses pursuant to Rule 404(b) of the Texas Rules of Procedure. However, Elliott did not object to the testimony of any of the three witnesses. He only objected to the State questioning Elliott on cross-examination regarding non-consensual sex with each of the three witnesses. Elliott does not complain about that testimony on appeal. Accordingly, Elliott's complaints about the erroneous admission of the three witnesses' testimony is not preserved. TEX. R. APP. P. 33.1. His sixth, seventh, and eighth issues are overruled.

In his ninth issue, Elliott complains that the trial court erred by allowing the cross-examination of a defense rebuttal witness regarding a prior bad act of Elliott. Elliott raised no objection to the question by the State and has preserved nothing for review. TEX. R. APP. P. 33.1. Elliott's ninth issue is overruled.

In his tenth issue, Elliott contends his Sixth Amendment right to confront and cross-examine witnesses was violated by the admission of a forensic DNA test report

through an individual who did not prepare the report. Elliott did not object to the admission of the evidence; thus his Confrontation Clause argument is waived. *See* TEX. R. APP. P. 33.1(a); *Paredes v. State*, 129 S.W.3d 530, 535 (Tex. Crim. App. 2004) (trial objection on hearsay grounds failed to preserve error on Confrontation Clause grounds); *Wright v. State*, 28 S.W.3d 526, 536 (Tex. Crim. App. 2000) (Confrontation Clause argument waived by failing to object on that basis). Elliott's tenth issue is overruled.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his final issue, Elliott argues that he was denied his Sixth Amendment right to the effective assistance of counsel at trial. Specifically, he contends that the failure to cross examine Jasmin by the use of her written statement, the failure to exploit a gap in the surveillance video at the apartment complex, and the decision to put Elliott on the stand in the face of extraneous offense testimony from three other females alleging sexually assaultive events, denied Elliott of his right to the effective assistance of counsel.

In order to prevail on a claim of ineffective assistance of counsel, Elliott must meet the two-pronged test established by the United States Supreme Court in *Strickland* that (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex.

Crim. App. 2011). Unless a defendant can prove both prongs, an appellate court must not find counsel's representation to be ineffective. *Lopez*, 343 S.W.3d at 142. In order to satisfy the first prong, Elliott must prove by a preponderance of the evidence that trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms. *Id.* To prove prejudice, Elliott must show that there is a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different. *Id.*

An appellate court must make a "strong presumption that counsel's performance fell within the wide range of reasonably professional assistance." *Id.* (quoting *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006)). Claims of ineffective assistance of counsel are generally not successful on direct appeal and are more appropriately urged in a hearing on an application for a writ of habeas corpus. *Id.* at 143 (citing *Bone v. State*, 77 S.W.3d 828, 833 n. 13 (Tex. Crim. App. 2002)). On direct appeal, the record is usually inadequately developed and "cannot adequately reflect the failings of trial counsel" for an appellate court "to fairly evaluate the merits of such a serious allegation." *Id.* (quoting *Bone*, 77 S.W.3d at 833).

Elliott filed a motion for new trial alleging ineffective assistance of counsel based on several grounds, including counsel's failure to exploit the gap in the video surveillance and, in part, counsel's decision to have Elliott testify.

We review a trial judge's denial of a motion for new trial under an abuse of

discretion standard. *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014); *Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001). "We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable." *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). A trial judge abuses his discretion in denying a motion for new trial when no reasonable view of the record could support his ruling. *Colyer*, 428 S.W.3d at 122; *Holden*, 201 S.W.3d at 763. We view the evidence in the light most favorable to the trial judge's ruling and presume that all reasonable factual findings that could have been made against the losing party were made against that losing party. *Colyer*, 428 S.W.3d at 122; *Quinn v. State*, 958 S.W.2d 395, 402 (Tex. Crim. App. 1997).

At a motion for new trial hearing, the judge alone determines the credibility of the witnesses. *Colyer*, 428 S.W.3d at 122; *Salazar*, 38 S.W.3d at 148. Even if the testimony is not controverted or subject to cross-examination, the trial judge has discretion to disbelieve that testimony. *Colyer*, 428 S.W.3d at 122; *Masterson v. State*, 155 S.W.3d 167, 171 (Tex. Crim. App. 2005).

*Video Gap*

The testimony at the motion for new trial centered on the State failing to notice and inform Elliott's trial counsel of the 30 minute "gap" in the surveillance video from the apartment complex, not as to how trial counsel could have used the "gap" to Elliott's benefit. Elliott only argued at the hearing on the motion for new trial, that

because Jasmine's statement indicated she and Elliott had sex in the pool area, the gap in the video, allegedly of the pool area, would be relevant to whether the sexual encounter was consensual and that the defense could have argued why was that portion of the video not there.

Elliott has the burden to prove that his counsel was ineffective. There was nothing presented at the hearing on the motion for new trial to suggest that counsel's representation fell below an objective standard of reasonableness under the prevailing professional norms or that there was a reasonable probability that the result of the trial would have been different but for trial counsel's failure to expose or exploit the gap in the video. Although Elliott testified at the hearing that counsel never informed him of the gap, neither the State nor trial counsel thought the video was very important. The State did not notice the gap until it was pointed out in Elliott's motion for new trial. It did not think the video was very important. By affidavit, trial counsel for Elliott stated that after viewing the video for trial, he did not find anything to contradict Jasmin's testimony or that would be beneficial for the defense.

Elliott never disputed that he and Jasmine had sex. He disputed whether the encounter was without consent. Thus, the trial court could have believed trial counsel's affidavit and determined the missing portion of the surveillance, would not be beneficial to the defensive strategy. Accordingly, the trial court did not abuse its discretion in denying Elliott's motion for new trial on this ground for ineffective

assistance of counsel.

*Decision to Testify*

Trial counsel testified by affidavit that he and Elliott had discussed the pros and cons of Elliott testifying at trial. They were aware of the extraneous offenses and had been furnished copies of those offense reports. They knew that if Elliott testified, those additional allegations would be introduced. They also discussed that the defense of the case was consent. They had determined the case to be a "she said, he said" situation and that Elliott would have to testify to tell his version that the sexual acts were consensual. Trial counsel also testified that Elliott was aware of the dangers and risks of testifying and also the possible benefits of testifying. It was counsel's trial strategy that the jury hear Elliott's version. Elliott was also aware of his right to remain silent. Counsel and Elliott had discussed that testifying would be a trial time decision, depending on how the trial and evidence was going.

Elliott testified at the hearing on the motion for new trial that he was never prepared to testify and that counsel "just put me up there."

Because the trial court is the sole judge of the credibility of the witnesses, he could have disbelieved Elliott and believed trial counsel's testimony. Further, based on counsel's affidavit, the trial court could have reasonably determined that the decision to have Elliott testify was trial strategy. Accordingly, the trial court did not abuse its discretion in denying Elliott's motion for new trial on this ground for ineffective

assistance of counsel.

*Failure to Cross Examine*

Elliott's other ground for ineffective assistance of counsel raised on appeal, that counsel failed to cross examine Jasmine with her prior statement, was not raised in the motion for new trial. Consequently, the record is inadequately developed and cannot adequately reflect the alleged failings of trial counsel.

*Other Grounds*

Elliott does not discuss on appeal the other grounds alleged in his motion for new trial as evidencing ineffective assistance of counsel. Thus, we conclude the record is insufficient to establish that counsel's representation fell below an objective standard of reasonableness. And to the extent Elliott argues that due to the other issues presented in this appeal, his counsel was ineffective, again, the record is inadequately developed and cannot adequately reflect the alleged failings of trial counsel. Thus, we cannot say that counsel was ineffective on these grounds.

Elliott's eleventh issue is overruled.

## CONCLUSION

Having overruled each issue on appeal, we affirm the trial court's judgments.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed April 23, 2015
Do not publish
[CR25]



# APPENDIX "B"



# IN THE
# TENTH COURT OF APPEALS

## No. 10-14-00112-CR

**TEVIN SHERARD ELLIOTT,**

Appellant

v.

**THE STATE OF TEXAS,**

Appellee

From the 54th District Court
McLennan County, Texas
Trial Court No. 2012-1543-C2

## ORDER

Tevin Sherard Elliott's motion for rehearing is denied.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
Justice Davis, and
Justice Scoggins
Motion denied
Order issued and filed May 28, 2015



# CERTIFICATE OF COMPLIANCE

At the request of the Court, I certify that this submitted computer CD complies with the following requests of the Court:

(1) This filing is labeled with or accompanied by the following information:

a. Case Style: **Tevin Sherard Elliott v. State of Texas**

b. Case Number: _____; **COA# 10-14-00129-CR**

c. The Type of Brief: **Petition for Discretionary Review**

d. The Word Processing Software and Version Used to prepare the filing: **pdf – Microsoft Office Word 2010**

e. This document contains 4,440 numbers of words.

2. This CD contains only an electronic copy of the original document which was filed in the Tenth Court of Appeals Clerk's office and does not contain any document or portion thereof that is not included in the original filing, except for hyperlinks to documents that could be included in an appendix but were too voluminous or impracticable to be attached to the hard copy.

3. The electronic filing is free of viruses, spyware, adware, rootkits, or any other similar data or files that would be disruptive to the Court's computer system. The following software, if any, was used to ensure the filing is in compliance: **Norton Antivirus**

**4. I understand the submission of a brief in electronic format is not considered a filing in this Court. All eBriefs submitted must have been previously filed in printed form in compliance with the Texas Rules of Appellate Procedure.**

/s/WILLIAM A. BRATTON III
**WILLIAM A. BRATTON III**
2828 Routh St. Ste. 675-LB10
Dallas, Texas 75201
Off: 214-871-1133 / Fax: 214-871-0620
Bar No. 02916300