

# IN THE
# TENTH COURT OF APPEALS

## No. 10-14-00112-CR

**TEVIN SHERARD ELLIOTT,**

                                          **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                          **Appellee**

### From the 54th District Court
### McLennan County, Texas
### Trial Court No. 2012-1543-C2

## MEMORANDUM OPINION

Tevin Sherard Elliott was a college football player. He attended a friend's party at the clubhouse of an apartment complex. Jasmin Hernandez attended the same party with some of her friends. She met Elliott for the first time at the party. After socializing and having a few drinks with her friends, Jasmin went to the bathroom. When she returned, she could not find her friends. Elliott offered to help her find them and led her out the back door of the clubhouse to the pool and recreational area of the complex. Jasmin protested. Elliott carried Jasmin to a muddy slope where Elliott sexually

assaulted her. After putting their clothes back on, Elliott carried Jasmin to another part of the recreational area and sexually assaulted her again. Afterwards, Jasmin found her friends and, crying, told them what happened. She was taken to the hospital where she gave a statement about what happened and had a sexual assault examination. Elliott asserted that the sexual conduct was consensual.

After a jury trial, Elliott was convicted of two counts of sexual assault. *See* TEX. PENAL CODE ANN. § 22.011 (West 2011). Because we overrule each of Elliott's issues on appeal, the trial court's judgments are affirmed.

**SUFFICIENCY OF INDICTMENT**

In his first issue, Elliott asserts that the indictment was facially insufficient because it failed to allege with particularity the manner and means for the lack of consent of the complainant. Specifically, he contends he was not properly advised which of the 11 ways in which a sexual assault can occur without the victim's consent.

Texas law requires the defendant to object to any alleged error in the indictment before the day of trial and certainly before the jury is empaneled. *Teal v. State*, 230 S.W.3d 172, 177 (Tex. Crim. App. 2007). The relevant statute provides:

> (b) If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding. Nothing in this article prohibits a trial court from requiring that an objection to an indictment or information be made at an earlier time in compliance with Article 28.01 of this code.

TEX. CODE CRIM. PROC. art. 1.14 (West 2005).

Elliott did not object to the sufficiency of the indictment prior to the day of trial. He raises this issue for the first time on appeal. However, we still need to determine whether the indictment is constitutionally sufficient before applying the waiver doctrine set out in the statute. *Teal v. State*, 230 S.W.3d 172, 180-81 (Tex. Crim. App. 2007). The question to be asked is: Can the district court and the defendant determine, from the face of the indictment, that the indictment intends to charge a felony or other offense for which a district court has jurisdiction? *Id.* at 180. If so, a defendant must make a pretrial objection to a substantive defect in the information or indictment or forfeit the right to complain about it on appeal. *Smith v. State*, 309 S.W.3d 10, 18 (Tex. Crim. App. 2010).

Here, Elliott was charged in the indictment with two counts of sexual assault, both alleging that on April 15, 2012, Elliott "intentionally or knowingly" caused the penetration of the sexual organ of Jane Doe,[1] by Elliott's sexual organ, without Jane Doe's consent. It is clear that the indictment intended to charge Elliott with sexual assault. Sexual assault is a felony and all of the necessary elements were pled. Pleading the manner and means of vitiating consent are not necessary elements of sexual assault. *See Moss v. State*, No. 07-12-00067-CR, 2013 Tex. App. LEXIS 9715, 9 (Tex. App.—

---

[1] Jane Doe was the pseudonym for the complainant, Jasmin Hernandez, which was used in the indictment.

Amarillo Aug. 2, 2013, pet. ref'd) (not designated for publication). The trial court and defendant could conclude that the indictment charged a felony and the court had jurisdiction of that offense. Accordingly, to preserve this issue for appellate review, Elliott needed to object to the indictment prior to the day of trial. Because he did not, his complaint on appeal is waived; and his first issue is overruled.

## CHALLENGE TO VENIRE MEMBER

Elliott next contends that the trial court erred in refusing to excuse venire member 14 for cause due to that venire member's inability to follow the law.

A defendant may challenge a potential juror for cause if he is biased or prejudiced against the defendant or the law on which the State or defendant is entitled to rely. *Comeaux v. State*, 445 S.W.3d 745, 749 (Tex. Crim. App. 2014); *Gardner v. State*, 306 S.W.3d 274, 295 (Tex. Crim. App. 2009). Elliott does not point to any place in the record where he made a challenge to venire member 14. And we have not found a challenge in the record either. Although to establish *harm* for an erroneous denial of a challenge for cause, the defendant must show on the record that: (1) he asserted a clear and specific challenge for cause; (2) he used a peremptory challenge on the complained-of venire member; (3) his peremptory challenges were exhausted; (4) his request for additional strikes was denied; and (5) an objectionable juror sat on the jury, *see Comeaux*, 445 S.W.3d at 749; *Davis v. State*, 329 S.W.3d 798, 807 (Tex. Crim. App. 2010), when no challenge at all is made to a juror, the issue of whether the juror is challengeable for

cause has not been preserved. *See* TEX. R. APP. P. 33.1. Elliott does not argue that the trial court should have, *sua sponte*, excused the venire member. *See Warren v. State*, 768 S.W.2d 300, 303 (Tex. Crim. App. 1989) ("It is well settled that a trial judge should not on his own motion excuse a prospective juror for cause unless the juror is absolutely disqualified from serving on the jury.").

Regardless of whether or not the venire member was challengeable for cause, Elliott did not challenge venire member 14 for cause at all, and his complaint on appeal is not preserved. Elliott's second issue is overruled.

**PERJURED TESTIMONY**

In his fifth issue, Elliott asserts that his due process rights under the Fourteenth Amendment to the United States Constitution were violated by the State's knowing use of perjured testimony. Elliott alleges that the State knowingly presented perjured testimony regarding Jasmin's level of intoxication the night of the assaults.

To constitute a violation of due process under Federal precedent, the State must knowingly use false testimony. *Ex parte Ghahremani*, 332 S.W.3d 470, 478 (Tex. Crim. App. 2011). There is no requirement that the offending testimony be "criminally perjurious;" it is sufficient if the witness's testimony gives the trier of fact a false impression. *Id*. at 477. The appellant bears the burden of showing that the testimony used by the State was, in fact, perjured. *Losada v. State*, 721 S.W.2d 305, 311 (Tex. Crim. App. 1986).

The knowing use of false testimony violates due process when there is a "reasonable likelihood" that the false testimony affected the outcome. *Id*. at 478. In other words, the false testimony must have been material. *Id*. A finding of materiality obviates the need to conduct a separate harmless error analysis on direct appeal. *Ex parte Fierro*, 934 S.W.2d 370, 373 (Tex. Crim. App. 1996).

*Trial Testimony*

Jasmin testified that she socialized at the party and had "maybe two cups" of a punch with alcohol in it. She stated that she had a shot of vodka at the party as well. Further, she stated that she had a high tolerance for alcohol and did not think she was intoxicated at the party. The State qualified her statement by asking if she was so intoxicated she could not walk. Jasmin replied that she could walk. The officer who initially responded to the hospital did not think Jasmin was intoxicated.[2] The nurse who performed the sexual assault exam on Jasmin several hours later did not recall noticing a smell of alcohol on Jasmin. The nurse noted, however, that when she asked Jasmine if she had anything alcoholic to drink within the last 12 hours, Jasmine replied she had not.

On cross-examination, Jasmin stated she did not recall telling the officer to whom she gave a statement that she had three cups of punch and two shots of vodka. Jasmin also did not recall telling the nurse that she had not had anything to drink in the last

---

[2] This officer was not the officer who took Jasmin's statement. The officer who took the statement was not asked whether he thought Jasmin was intoxicated.

twelve hours. She thought she had told the nurse that she had drank an alcoholic beverage within 12 hours prior to the exam.

*Motion for New Trial*

At the hearing on the motion for new trial, one of the prosecutors was called to testify and was questioned about why the State did not let trial counsel know there was a 30 minute gap in the apartment complex surveillance video provided to the defense. The prosecutor explained that she did not notice the gap until it was pointed out in Elliott's motion for new trial. She also explained that she did not think the missing portion, which potentially was of the pool area, was relevant because based on what Jasmin had told her, it would not have shown either of the sexual assaults. When confronted with Jasmin's statement to police that she was carried to the pool area where she was again sexually assaulted, the prosecutor replied that she read the statement after talking to Jasmin and did not think it was inconsistent with Jasmin's allegation that the second act occurred against a fence. The prosecutor still did not believe the missing video would show the second act. On re-direct, the prosecutor explained that what was relevant to her was the totality of the evidence, not just the surveillance video. When Elliott's counsel noted that Jasmine had "said a lot of things" in her statement, the prosecutor responded, "Well, she was also drunk when she wrote that statement."

*Application*

This last statement by the prosecutor is what Elliott relies on to assert that the

State knowingly presented perjured testimony. We disagree. Clearly, Jasmin had been drinking at the party. No one testified otherwise. She had two or three cups of an alcoholic punch and one or two shots of vodka. That Jasmin thought she was not intoxicated at the party and the State thought she was "drunk"[3] when she wrote a statement with inconsistencies does not create a false impression of sobriety to the jury.

Elliott's fifth issue is overruled.

**PRESERVATION OF COMPLAINTS**

By his third issue, Elliott argues the trial court erred in allowing the State to reopen voir dire at the conclusion of Elliott's counsel's voir dire examination. Elliott cites no authority for the proposition that the State cannot reopen voir dire. Thus, this issue is improperly briefed and presents nothing for review. *See* TEX. R. APP. P. 38.1(i); *Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000). Regardless, there was no objection to the State's action. Accordingly, error, if any, is not preserved. TEX. R. APP. P. 33.1. Elliott's third issue is overruled.

Elliott contends in his fourth issue that the trial court erred in limiting Elliott's cross-examination of a witness in violation of Elliott's Fifth, Sixth, and Fourteenth Amendment rights. Specifically, Elliott contends he was not permitted to cross-examine the witness regarding a prior statement she had made. There is nothing in the record that indicates the trial court would not allow counsel to cross-examine the witness

---

[3] There was no explanation as to what the prosecutor meant by "drunk."

regarding the statement. There were two discussions in chambers and off the record but we do not know what occurred during those discussions. Further, no offer of proof was made. Accordingly, this issue is not preserved, and Elliott's fourth issue is overruled. *See* Tex. R. App. P. 33.1.

In issues six, seven, and eight, Elliott asserts the trial court erred in allowing the rebuttal testimony of three witnesses. Specifically, he contends that none of the witnesses' testimony was sufficient to establish a "modus operandi" for extraneous offenses pursuant to Rule 404(b) of the Texas Rules of Procedure. However, Elliott did not object to the testimony of any of the three witnesses. He only objected to the State questioning Elliott on cross-examination regarding non-consensual sex with each of the three witnesses. Elliott does not complain about that testimony on appeal. Accordingly, Elliott's complaints about the erroneous admission of the three witnesses' testimony is not preserved. Tex. R. App. P. 33.1. His sixth, seventh, and eighth issues are overruled.

In his ninth issue, Elliott complains that the trial court erred by allowing the cross-examination of a defense rebuttal witness regarding a prior bad act of Elliott. Elliott raised no objection to the question by the State and has preserved nothing for review. Tex. R. App. P. 33.1. Elliott's ninth issue is overruled.

In his tenth issue, Elliott contends his Sixth Amendment right to confront and cross-examine witnesses was violated by the admission of a forensic DNA test report

through an individual who did not prepare the report. Elliott did not object to the admission of the evidence; thus his Confrontation Clause argument is waived. *See* TEX. R. APP. P. 33.1(a); *Paredes v. State*, 129 S.W.3d 530, 535 (Tex. Crim. App. 2004) (trial objection on hearsay grounds failed to preserve error on Confrontation Clause grounds); *Wright v. State*, 28 S.W.3d 526, 536 (Tex. Crim. App. 2000) (Confrontation Clause argument waived by failing to object on that basis). Elliott's tenth issue is overruled.

**INEFFECTIVE ASSISTANCE OF COUNSEL**

In his final issue, Elliott argues that he was denied his Sixth Amendment right to the effective assistance of counsel at trial. Specifically, he contends that the failure to cross examine Jasmin by the use of her written statement, the failure to exploit a gap in the surveillance video at the apartment complex, and the decision to put Elliott on the stand in the face of extraneous offense testimony from three other females alleging sexually assaultive events, denied Elliott of his right to the effective assistance of counsel.

In order to prevail on a claim of ineffective assistance of counsel, Elliott must meet the two-pronged test established by the United States Supreme Court in *Strickland* that (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex.

Crim. App. 2011). Unless a defendant can prove both prongs, an appellate court must not find counsel's representation to be ineffective. *Lopez*, 343 S.W.3d at 142. In order to satisfy the first prong, Elliott must prove by a preponderance of the evidence that trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms. *Id*. To prove prejudice, Elliott must show that there is a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different. *Id*.

An appellate court must make a "strong presumption that counsel's performance fell within the wide range of reasonably professional assistance." *Id*. (quoting *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006)). Claims of ineffective assistance of counsel are generally not successful on direct appeal and are more appropriately urged in a hearing on an application for a writ of habeas corpus. *Id*. at 143 (citing *Bone v. State*, 77 S.W.3d 828, 833 n. 13 (Tex. Crim. App. 2002)). On direct appeal, the record is usually inadequately developed and "cannot adequately reflect the failings of trial counsel" for an appellate court "to fairly evaluate the merits of such a serious allegation." *Id*. (quoting *Bone*, 77 S.W.3d at 833).

Elliott filed a motion for new trial alleging ineffective assistance of counsel based on several grounds, including counsel's failure to exploit the gap in the video surveillance and, in part, counsel's decision to have Elliott testify.

We review a trial judge's denial of a motion for new trial under an abuse of

discretion standard. *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014); *Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001). "We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable." *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). A trial judge abuses his discretion in denying a motion for new trial when no reasonable view of the record could support his ruling. *Colyer*, 428 S.W.3d at 122; *Holden*, 201 S.W.3d at 763. We view the evidence in the light most favorable to the trial judge's ruling and presume that all reasonable factual findings that could have been made against the losing party were made against that losing party. *Colyer*, 428 S.W.3d at 122; *Quinn v. State*, 958 S.W.2d 395, 402 (Tex. Crim. App. 1997).

At a motion for new trial hearing, the judge alone determines the credibility of the witnesses. *Colyer*, 428 S.W.3d at 122; *Salazar*, 38 S.W.3d at 148. Even if the testimony is not controverted or subject to cross-examination, the trial judge has discretion to disbelieve that testimony. *Colyer*, 428 S.W.3d at 122; *Masterson v. State*, 155 S.W.3d 167, 171 (Tex. Crim. App. 2005).

*Video Gap*

The testimony at the motion for new trial centered on the State failing to notice and inform Elliott's trial counsel of the 30 minute "gap" in the surveillance video from the apartment complex, not as to how trial counsel could have used the "gap" to Elliott's benefit. Elliott only argued at the hearing on the motion for new trial, that

because Jasmine's statement indicated she and Elliott had sex in the pool area, the gap in the video, allegedly of the pool area, would be relevant to whether the sexual encounter was consensual and that the defense could have argued why was that portion of the video not there.

Elliott has the burden to prove that his counsel was ineffective. There was nothing presented at the hearing on the motion for new trial to suggest that counsel's representation fell below an objective standard of reasonableness under the prevailing professional norms or that there was a reasonable probability that the result of the trial would have been different but for trial counsel's failure to expose or exploit the gap in the video. Although Elliott testified at the hearing that counsel never informed him of the gap, neither the State nor trial counsel thought the video was very important. The State did not notice the gap until it was pointed out in Elliott's motion for new trial. It did not think the video was very important. By affidavit, trial counsel for Elliott stated that after viewing the video for trial, he did not find anything to contradict Jasmin's testimony or that would be beneficial for the defense.

Elliott never disputed that he and Jasmine had sex. He disputed whether the encounter was without consent. Thus, the trial court could have believed trial counsel's affidavit and determined the missing portion of the surveillance, would not be beneficial to the defensive strategy. Accordingly, the trial court did not abuse its discretion in denying Elliott's motion for new trial on this ground for ineffective

assistance of counsel.

*Decision to Testify*

Trial counsel testified by affidavit that he and Elliott had discussed the pros and cons of Elliott testifying at trial. They were aware of the extraneous offenses and had been furnished copies of those offense reports. They knew that if Elliott testified, those additional allegations would be introduced. They also discussed that the defense of the case was consent. They had determined the case to be a "she said, he said" situation and that Elliott would have to testify to tell his version that the sexual acts were consensual. Trial counsel also testified that Elliott was aware of the dangers and risks of testifying and also the possible benefits of testifying. It was counsel's trial strategy that the jury hear Elliott's version. Elliott was also aware of his right to remain silent. Counsel and Elliott had discussed that testifying would be a trial time decision, depending on how the trial and evidence was going.

Elliott testified at the hearing on the motion for new trial that he was never prepared to testify and that counsel "just put me up there."

Because the trial court is the sole judge of the credibility of the witnesses, he could have disbelieved Elliott and believed trial counsel's testimony. Further, based on counsel's affidavit, the trial court could have reasonably determined that the decision to have Elliott testify was trial strategy. Accordingly, the trial court did not abuse its discretion in denying Elliott's motion for new trial on this ground for ineffective

assistance of counsel.

*Failure to Cross Examine*

Elliott's other ground for ineffective assistance of counsel raised on appeal, that counsel failed to cross examine Jasmine with her prior statement, was not raised in the motion for new trial. Consequently, the record is inadequately developed and cannot adequately reflect the alleged failings of trial counsel.

*Other Grounds*

Elliott does not discuss on appeal the other grounds alleged in his motion for new trial as evidencing ineffective assistance of counsel. Thus, we conclude the record is insufficient to establish that counsel's representation fell below an objective standard of reasonableness. And to the extent Elliott argues that due to the other issues presented in this appeal, his counsel was ineffective, again, the record is inadequately developed and cannot adequately reflect the alleged failings of trial counsel. Thus, we cannot say that counsel was ineffective on these grounds.

Elliott's eleventh issue is overruled.

**CONCLUSION**

Having overruled each issue on appeal, we affirm the trial court's judgments.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed April 23, 2015
Do not publish
[CR25]

