# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-21-00545-CR

**David Joseph Borders, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 426TH DISTRICT COURT OF BELL COUNTY
### NO. FR80475, THE HONORABLE STEVEN J. DUSKIE, JUDGE PRESIDING

## O P I N I O N

David Joseph Borders was indicted for aggregate theft of property. *See* Tex. Penal Code §§ 31.03, .09. After being indicted, Borders filed a motion to quash the indictment. Following several hearings, the trial court denied the motion. Borders then entered into a plea-bargain agreement with the State. Consistent with the agreement, the trial court deferred Borders's adjudication of guilt and placed him on deferred-adjudication community supervision for ten years. *See* Tex. Code Crim. Proc. art. 42A.101. On appeal, Borders argues that the trial court erred by denying his motion to quash. We will affirm the trial court's order of deferred adjudication.

## BACKGROUND

Prior to his arrest, Borders worked for the Little River Academy Volunteer Fire Department ("Department"). The arrest affidavit stated that the Department's current treasurer noticed "numerous cash advances from the [D]epartment's BBVA debit card with no discernable

purpose," concluded that there could be "no legitimate reason for the number and amount of cash advances," and reported the suspicious activity to the police. The investigating police officer obtained the Department's bank records, found "cash withdrawals . . . from 2016 to 2018," "determined that the cash withdrawals ranged from $1,000 to $4,000 a month chiefly at increments of 200 to 400 dollars with many transactions occurring on the same day," and concluded that the "amount of funds appropriated between 2016 and 2018 was well in excess of $30,000.00." The affidavit specified that Borders agreed to be interviewed by the police and admitted that he withdrew some cash from the Department's accounts for personal use.

The police report prepared in this case specified that many of the "questionable transactions" noticed by the Department's treasurer were "ATM cash withdrawals," that other debit withdrawals occurred at stores, and that approximately $45,000 was withdrawn from the Department's accounts from October 2016 to June 2018 and remained unaccounted for. The debit card that was used to make the withdrawals "was assigned to Tanya Borders," who is Borders's wife and who had previously worked for the Department. The report identified some of the ATMs and stores where the withdrawals occurred, related that security camera footage shows Borders and his son William Borders making some withdrawals, and documented that the investigation focused on withdrawals occurring from October 2016 to June 2018.

The report explained that the Department's financial obligations are handled "with a debit card or by check," and former Department treasurers explained to the officer that because of the way the Department paid its bills, there was no reason to withdraw cash from the Department's accounts. One of the former treasurers explained that Borders admitted to using the debit card for expenses incurred during a family trip, including "fuel, meals, and lodging." The police report stated that from January 2016 to July 2018, Borders and Tanya regularly made

2

cash deposits into their bank accounts totaling over $30,000 even though their employer paid them by check.

During an interview with the police, William admitted to using the debit card to withdraw money from the Department's accounts for personal purposes, and he told the police that Borders kept the card in his wallet. Similarly, Borders admitted to keeping the card in his wallet and using that card at ATMs to withdraw money from the Department's accounts—approximately $400 per week—but asserted that he withdrew the money to pay for items used to benefit the Department.

Borders was arrested and indicted for the offense of aggregate theft of property with a value of $30,000 or more but less than $150,000. Specifically, the indictment alleged as follows:

> [Borders] did then and there, in a continuing course of conduct beginning October 1, 2016 and continuing to June[] 30 2018, unlawfully appropriate, by acquiring or otherwise exercising control over, property, to-wit: United States currency, of the value of $30,000 or more but less than $150,000 from the Little River Academy Volunteer Fire Department, the owner thereof, without the effective consent of the owner, and with intent to deprive the owner of the property, and the defendant was then and there a public servant, namely, fire chief, and such property appropriated by the defendant had theretofore come into his custody, possession, or control by virtue of his status as such a public servant.

After he was indicted, Borders filed a motion to quash. In his motion, Borders asserted that the indictment was fatally defective because it failed to provide him sufficient notice of the factual basis of the alleged offense to allow him to prepare a defense. Borders conceded in his motion that the indictment need not allege each specific act on which the State intends to rely and that the notice requirement can be satisfied by other methods; however, Borders urged that the discovery provided in this case did not provide sufficient notice because

3

it was voluminous and not organized in a logical fashion, rendering it impossible for him to prepare his defense based on any particular transactions.

In its response, the State argued that the transactions forming the basis for the alleged offense are the "debit card withdrawals from" the Department's accounts and that the discovery in this case provided sufficient notice of those transactions. As support, the State attached to its response the arrest affidavit; the police report; a list of discovery that had been provided to Borders, including the transaction histories for several bank accounts; a summary of the cash withdrawals made from the Department's accounts from October 2016 to June 2018; and a list of the monthly statements for the bank accounts from which allegedly illegal withdrawals were made (e.g., BBVA Compass Transaction History April 2017). The State included a transaction history from one bank account for November 2017 as a sample of the types of bank records that had already been disclosed in discovery. The sample bank record showed for each withdrawal its date, amount, location, and type, including identifying whether the transaction was a cash withdrawal from an ATM or a debit withdrawal from a store. Further, one member of the investigation team circled all the ATM withdrawals for that month, circled some other check-card purchases from stores, and highlighted debit withdrawals used to make purchases at stores, including convenience stores.

The trial court held several hearings on the motion to quash during which the trial court reviewed an exhibit offered by Borders containing hundreds of pages of bank records.[1]

---

[1] The exhibit was not formally admitted until the plea hearing after the trial court denied the motion to quash; however, the trial court considered the exhibit during the hearings on the motion when making its ruling, and the parties referred to the exhibit during the hearings. In fact, when Borders offered the exhibit for admission, he explained that he thought the exhibit had been admitted earlier and that he was offering the exhibit in support of his motion to quash. Similarly, the State explained that the trial court relied on the exhibit when making its ruling. *Cf. State v. Opare*, 583 S.W.3d 685, 692 (Tex. App.—Fort Worth 2018, no pet.) (explaining that

4

The exhibit had previously been disclosed to Borders by the State and contained several groups of documents. One group is approximately eighty pages in length and contains the monthly transaction histories from October 2016 to June 2018 for the accounts at issue, including the sample transaction history mentioned above. As with the sample document, this group of account histories documents for each transaction its date, amount, location, and type (e.g., ATM withdrawal or debit withdrawal from a store).

During one hearing, the State explained that the transactions showing the alleged illegal conduct were in this group of transaction histories and that as with the sample document, the allegedly improper withdrawals had been circled or highlighted by one of the investigating officers. The exhibit similarly shows that most of the transactions were highlighted or circled, that all the cash withdrawals from ATMs were circled, and that certain debit withdrawals made for purchases at stores were highlighted. Consistent with its prior filings and the police report, the State explained during one of the hearings that the transactions at issue can be identified by looking at the transaction histories for the months in question.

After listening to the parties' arguments, the trial court denied the motion. Following that ruling, Borders entered into a plea agreement with the State in which the State agreed to recommend that Borders be placed on deferred-adjudication community supervision for ten years. At the plea hearing, Borders entered "a plea of no contest." The trial court accepted the plea, deferred Borders's adjudication of guilt, and placed him on deferred-adjudication community supervision for ten years.

Borders appeals the trial court's order deferring his adjudication of guilt.

---

evidence will be deemed to have been admitted when "the trial court and the parties treated the evidence as admitted" and when evidence speaks for itself).

**STANDARD OF REVIEW AND GOVERNING LAW**

Criminal defendants have the constitutional right "to be informed of the nature and cause of the accusation" against them. U.S. Const. amend. VI. Consequently, indictments "must be specific enough to inform the accused of the nature of the accusation against him so that he may prepare a defense." *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004); *see also* Tex. Code Crim. Proc. arts. 21.02-.04, .11 (setting out statutory requirements for indictments). "The sufficiency of a charging instrument presents a question of law." *Smith v. State*, 309 S.W.3d 10, 13 (Tex. Crim. App. 2010). Accordingly, appellate courts review a trial court's ruling on a motion to quash under a de novo standard. *Id.* at 13-14; *see also Moff*, 154 S.W.3d at 601 (applying de novo review to trial court's decision to quash indictment because issue was question of law and because resolution of issue did not depend on "credibility and demeanor of a witness"). "The trial court's ruling should be upheld if it is correct under any theory of law applicable to the case." *State v. Zuniga*, 512 S.W.3d 902, 906 (Tex. Crim. App. 2017).

"Generally, an indictment that tracks the language of the applicable statute will satisfy constitutional and statutory requirements." *Hughitt v. State*, 583 S.W.3d 623, 626 (Tex. Crim. App. 2019). Despite that general rule, an indictment tracking the statutory language can be insufficient to provide notice "when the statute is not 'completely descriptive of the offense.'" *State v. Peterson*, 612 S.W.3d 508, 512 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd) (quoting *Haecker v. State*, 571 S.W.2d 920, 921 (Tex. Crim. App. 1978)); *see also Moff*, 154 S.W.3d at 602 (noting that general rule applies when indictment is framed under statute "in which the act constituting the offense is defined so that the accused is informed of the nature of the charge"). Similarly, an indictment tracking the statutory language may be insufficient when

6

a defendant needs additional information to be able "to investigate the allegations against him and establish a defense." *See Moff*, 154 S.W.3d at 602; *see also id.* at 603 (noting that indictment alleged that defendant made illegal purchases over seven-year period and determining that defendant must be informed in some way "of the specific transactions that allegedly violate the statute"); *Swabado v. State*, 597 S.W.2d 361, 363-64 (Tex. Crim. App. 1980) (concluding that trial court should have granted motion to quash because indictment failed to specify which monthly staff report formed basis for charge for tampering with government record when defendant routinely prepared those types of reports for years). The notice requirement "may be satisfied by means other than the language in the charging instrument." *Kellar v. State*, 108 S.W.3d 311, 313 (Tex. Crim. App. 2003); *see Moff*, 154 S.W.3d at 603 (noting that specific acts need not "be listed in the indictment, as long as they are provided by some other means"). In fact, in some circumstances "[t]he State may satisfy this obligation through pre-trial discovery." *Hines v. State*, 608 S.W.3d 354, 371 (Tex. App.—Houston [1st Dist.] 2020, no pet.).

## DISCUSSION

In his issue on appeal, Borders contends that the trial court erred by failing to quash the "indictment because the indictment failed to provide sufficient notice to inform him of the specific acts for which he was charged to allow him to prepare his defense." In presenting this issue, Borders acknowledges that sufficient notice may be provided by means other than specific language in the indictment. Further, Borders agrees that the State sought to provide the required notice by attaching documents to its response to the motion to quash. However, Borders insists that viewing those documents along with the indictment still "fail[s] to provide sufficient notice to inform [him] of the specific acts for which he was charged." More specifically, Borders contends that he should not have to review the thirty-page police report "to

7

ferret out the illegitimate from the legitimate transactions on the . . . Department's various accounts." Similarly, Borders argues that highlighting and circling the allegedly illegal transactions on the various transaction histories did not provide sufficient notice because he should not be "required to cross-check" those markings "for accuracy." Instead, Borders contends that the State should have furnished a list containing only the unauthorized transactions that it sought to prove.

As support for his assertions, Borders primarily relies on *Moff*. In that case, Moff was the chief appraiser for a county, and his job required him to make purchases for the county. *Moff*, 154 S.W.3d at 600. Moff was indicted for the offense of misapplication of fiduciary property for transactions that took place over a seven-year period, but the indictment did not identify the purchases that were allegedly illegal. *Id.* Moff filed a motion to quash the indictment, arguing that he needed to know which transactions were allegedly illegal to prepare his defense. *Id.* In response, the State argued that Moff was presenting an evidentiary challenge and that he could learn through discovery which transactions formed the basis of the State's case. *Id.* Further, "the State acknowledged that its report on charges for the time period identified in the indictment was 60 pages long, but stated that it was not required to disclose which purchases were unauthorized" and explained that it had not yet decided which purchases it was going to use to support its case against the defendant. *Id.* at 600-01. The trial court granted the motion to quash, and the State appealed. *Id.* at 601.

On appeal, the Court of Criminal Appeals explained that although the indictment tracked the language of the governing statute and although tracking the statutory language is usually sufficient to provide notice, the defendant needed more specific information about the acts on which the State intended to rely to allow him to establish a defense where "each

8

unauthorized transaction was a separate criminal act but together constitutes the single offense of misapplication of fiduciary duty." *Id.* at 602, 603. Further, the Court noted that "[i]t is unreasonable to require the defendant to gather evidence and prepare a defense for each of the credit card and cash transactions he made during the seven-year time frame in the indictment" and that additional information regarding the specific transactions violating the statute was "reasonably necessary for the defense to prepare its case." *Id.* at 603. Additionally, the Court noted that the trial court rejected the State's assertion that the defendant should look to the law-enforcement report "to identify the unauthorized purchases" because the report "did not provide sufficiently specific notice." *Id.*[2]

Like the indictment at issue in *Moff*, the indictment in this case generally tracks the language of the statutes. *See* Tex. Penal Code §§ 31.03, .09. Also similar to the offense in *Moff*, each unauthorized withdrawal was a separate criminal act that together formed the single offense of aggregate theft of property over a twenty-one-month period. *See id.*; *Moff*, 154 S.W.3d at 603. Accordingly, after Borders filed his motion to quash on notice grounds, the State was obligated to provide more specific information about the acts on which it intended to rely in its prosecution. *See Moff*, 154 S.W.3d at 603. However, unlike the circumstances in *Moff* in which the State did not disclose the particular transactions that were at issue and had not

---

[2] In his brief, Borders quotes extensively from a footnote in *Moff* in which the Court set out the exchange between the State and the trial court where the trial court rejected the idea of using the law-enforcement report to provide notice of the transactions allegedly violating the statute. *State v. Moff*, 154 S.W.3d 599, 603 n.1 (Tex. Crim. App. 2004). However, nothing in the language of the opinion in *Moff* indicates that the Court intended the quoted language to provide any function other than to provide context regarding why the trial court in that case rejected the State's argument that the report could be used to provide the needed notice. *See Aguirre-Mata v. State*, 125 S.W.3d 473, 476 (Tex. Crim. App. 2003) (explaining that dicta has no binding effect).

decided which transactions to use in its prosecution, the State in this case identified the transactions serving as the basis for the offense.

As set out above, to provide additional specificity about the allegedly improper transactions, the State explained in its response that the transactions at issue were withdrawals from October 2016 to June 2018. Similarly, the arrest affidavit discussed improper cash withdrawals during that time, and the police report documented how the investigation started after the treasurer noticed that thousands of dollars had been withdrawn from the Department's accounts and explained how there was no reason to withdraw cash from the Department's accounts. Further, the report identified some of the withdrawals by date and documented how Borders and William admitted to making withdrawals from the Department's account.

Moreover, unlike the defendant in *Moff*, Borders was provided with additional information regarding the allegedly illegal conduct. Specifically, the State attached to its response a list of the monthly bank-account reports containing the allegedly improper withdrawals. Also, the State previously disclosed the actual transaction histories for those months when it gave Borders a bank-account disclosure. Although that disclosure was hundreds of pages in length, the transaction histories at issue were grouped together in an approximately eighty-page section and were identified in the list attached to the State's response. The transaction histories list the withdrawals for each month by their amount, date, type, and location. Further, the State explained during the hearings that one of the investigators highlighted or circled on the transaction histories the withdrawals serving as the basis for the prosecution. Consistent with that explanation, all the ATM withdrawals were circled on the transaction histories, and multiple debit withdrawals made for purchases at stores were highlighted.

10

Although this group of transactions is approximately eighty pages long, we note that hundreds of allegedly improper withdrawals are identified, that those withdrawals constitute significantly more than half of the total transactions during those months, and that the length of the report is partially due to the detail provided about each transaction. *See State v. Castorena*, 486 S.W.3d 630, 634 (Tex. App.—San Antonio 2016, no pet.) (concluding that disclosing "434 pages of cellular phone records upon which the State intended to base its prosecution" was sufficient to provide notice). To the extent that Borders contends that the notice was improper because he would have to verify the accuracy of the investigator's notations on the transaction histories, that undertaking would likely occur regardless of the form in which notice was provided. *Cf. Moff*, 154 S.W.3d at 602 (noting that point of providing notice is to allow defendant "to investigate the allegations against him and establish a defense").

On this record, we must conclude that the indictment and the additional information conveyed in the State's response and accompanying attachments, in the hearings, and in the previous bank-account disclosure provided Borders with notice that was specific enough to allow him to investigate the allegations against him and establish a defense. *See Kellar*, 108 S.W.3d at 314 (determining that defendant "had actual notice of the specific instances of theft upon which the State was basing its allegations" through four binders containing documentation of 149 transactions showing theft, through itemized list of transactions that State intended to rely on showing date and amount of transaction, and through copies of business records); *Rodgers v. State*, 608 S.W.3d 506, 518 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (deciding that defendant had adequate notice of each item allegedly taken from store "through the pre-trial disclosures of the offense report and the video recordings"); *Peterson*, 612 S.W.3d at 514 (concluding that defendant was provided adequate notice because, among

11

other reasons, State set out during hearing allegations that it would attempt to establish showing how defendant committed offense and that were consistent with theory of criminal liability set out in State's response to motion to quash).

Accordingly, we overrule Borders's issue on appeal.

**Clerical Errors in the Judgment**

Although Borders does not raise this issue on appeal, the State asserts that there are multiple clerical errors in the judgment that should be corrected. This Court has the authority to modify incorrect judgments when it has the information necessary to do so. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993).

First, the State notes that the trial court's order deferring adjudication lists the statute for offense as subsection 31.03(e)(5) and argues that the order should be amended to reference section 31.09 as well. Section 31.03 of the Penal Code defines the offense of theft and sets out the offense level for the offense based on the value or type of items stolen. *See* Tex. Penal Code § 31.03. However, Borders was indicted for aggregate theft. For aggregate theft, section 31.09 of the Penal Code explains that the amounts of thefts occurring during a course of conduct may be aggregated for the purpose of determining the offense level for theft. *See id.* § 31.09; *see Graves v. State*, 795 S.W.2d 185, 187 (Tex. Crim. App. 1990) (concluding that section 31.09 creates offense separate from theft). Accordingly, we reform the trial court's order to add a citation to "31.09" to the section of the order setting out the statute for the offense. *See Dirden v. State*, No. 09-14-00330-CR, 2016 WL 4485640, at *16 (Tex. App.—Beaumont Aug. 24, 2016, no pet.) (mem. op., not designated for publication).

Next, the State highlights that the trial court's order states that Borders pleaded guilty. However, as pointed out by the State, Borders pleaded "no contest" during the plea

12

hearing. Therefore, we modify the trial court's order to reflect that Borders pleaded "no contest" rather than "guilty." *See Hedemann v. State*, No. 05-18-00247-CR, 2021 WL 1334569, at *6 (Tex. App.—Dallas Apr. 9, 2021, pet. struck) (op., not designated for publication); *Flores-Alonzo v. State*, 460 S.W.3d 197, 210-11 (Tex. App.—Texarkana 2015, no pet.).

## CONCLUSION

Having overruled Borders's sole issue on appeal and having modified the trial court's order deferring adjudication to add section 31.09 as another statute for the offense and to reflect that Borders pleaded "no contest" rather than "guilty," we affirm the trial court's order as modified.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Triana

Modified and, as Modified, Affirmed

Filed:   August 18, 2022

Publish

13